COMMONWEALTH *vs.* GEORGE T. DeCASTRO (and three companion cases[1]). June 16, 1987. *Practice, Criminal,* Severance, Appeal, Instructions to jury. *Controlled Substances. Evidence,* Failure to produce witness.

Both defendants were convicted under G. L. c. 94C, § 32A, of unlawful distribution of cocaine on June 14, 1984 (one-half ounce), and under G. L. c. 94C, § 32E(*b*) (2), of trafficking in cocaine on July 19, 1984 (six ounces). The defendant DeCastro was also convicted of half-ounce sales on June 20 and June 29, 1984. DeCastro contended that he was entrapped. The defendant Santoro denied any involvement on June 14, and denied knowing involvement on July 19.

The Commonwealth's evidence was that Michael Michaud, indebted to DeCastro for prior cocaine purchases, began to fear for his safety when DeCastro engaged a collector, Casenza, to press for payment. Michaud went to the State police and with them worked out a plan whereby he would propose to DeCastro that he pay off his debt by "moving" cocaine for DeCastro. Michaud met with DeCastro and Casenza at a restaurant (the meeting was photographed by police photographers), and they agreed to his proposal. The price was to be $2,000 per ounce. There followed the series

---

[1] One of the cases (in three counts) is against DeCastro and two are against William J. Santoro.

of half-ounce sales on June 14, 20, and 29. (The police supplied the cash.) Santoro (according to Michaud) delivered the cocaine to DeCastro's apartment on June 14 and was present on June 20. The police had Michaud propose a larger purchase, which culminated in the six-ounce transaction on July 19. The package containing the cocaine was delivered to DeCastro's apartment by Santoro, and the police, on a signal from Michaud, raided the apartment, arresting DeCastro and Santoro and seizing the cocaine and other incriminating items.

1. The judge did not err in denying Santoro's motion to sever his trial from DeCastro's. The evidence implicating Santoro implicated DeCastro as well. In this situation "[j]oinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice time and energy to serve upon juries, and avoids the necessity of recalling witnesses to successive trials." *Commonwealth* v. *Moran,* 387 Mass. 644, 658 (1982). DeCastro's entrapment defense was not antagonistic to Santoro's defense, much less "to the point of being mutually exclusive." *Commonwealth* v. *Dickerson,* 17 Mass. App. Ct. 960 (1983). *Commonwealth* v. *Boutwell,* 21 Mass. App. Ct. 201, 208 (1985). DeCastro's testimony was exculpatory of Santoro.

2. Invoking the rule that, in response to an entrapment defense, the Commonwealth may introduce a defendant's prior criminal acts to show predisposition (see *Commonwealth* v. *Miller,* 361 Mass. 644, 652 [1972]; *Commonwealth* v. *DiCato,* 19 Mass. App. Ct. 40, 43 [1984]), the Commonwealth proposed to put in evidence a prior arrest of DeCastro in Florida for cocaine possession and his plea of nolo contendere in response thereto. Following the procedure suggested in *Commonwealth* v. *Diaz,* 383 Mass. 73, 81-82 (1981), DeCastro filed a motion in limine to preclude use of the Florida proceeding. The motion was denied. When DeCastro took the stand he put the Florida proceeding in evidence himself to blunt the force of the Commonwealth's use of it. Compare *Commonwealth* v. *Cadwell,* 374 Mass. 308, 311-312 (1978); *Commonwealth* v. *Coviello,* 378 Mass. 530, 531, 534 (1979); *Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257, 258 (1985). On those facts the correctness of the denial of the motion in limine is not before us. It was held in *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 7 (1986), and *Commonwealth* v. *Boyer,* 400 Mass. 52, 57 (1987), that a defendant who fails to object to the Commonwealth's introduction of evidence after the denial of his motion in limine to prevent its introduction has waived his right to review. It would be inconsistent to say that the defendant retains his right to review when he puts the evidence in himself. If relevant, we would hold that the point does not rise to the level of a substantial risk of a miscarriage of justice.

3. The defendants objected to the Commonwealth's being permitted to put in evidence a book of legal advice to drug users and sellers (entitled Legal First Aid for Today's High Society), one of several drug-related items seized by the police from DeCastro's apartment. The basis for the objection as stated at the trial was totally different from the basis urged on appeal.

The defendant is not entitled to review of the ruling on either basis. *Thibeault* v. *Massachusetts Elec. Co.,* 2 Mass. App. Ct. 24, 28 (1974). Liacos, Massachusetts Evidence 73 (5th ed. 1981). Neither defendant suggests that the admission of the evidence created a substantial risk of a miscarriage of justice. The prosecutor's brief suggestion (by questions put to DeCastro on cross-examination) that the book may have been the inspiration for DeCastro's entrapment defense may have been fair comment on the evidence (compare *Commonwealth* v. *MacDonald* [*No. 1*], 368 Mass. 395, 400-401 [1975]; *Commonwealth* v. *Cheek,* 374 Mass. 613, 618-619 [1978]; *Commonwealth* v. *McColl,* 375 Mass. 316, 323-324 [1978]) and was, in any event, not so prejudicial as to warrant reversal. The theme was not repeated in the prosecutor's closing argument.

4. The judge may not be faulted by the defendants for failing to limit the application of his missing witness instruction to particular missing witnesses when the defendants did not ask him to do so. The general objection to his giving such an instruction at all was plainly bad, if for no other reason than that Santoro's attorney had invited the jury to draw inferences adverse to the Commonwealth from its failure to call certain police witnesses. We do not imply that the instruction could not also properly apply to Rossi (DeCastro's girlfriend), to Trimarchi (Santoro's driver), to the names on DeCastro's list of debtors as to whom an availability foundation had been laid, and to Casenza, with whom DeCastro acknowledged his association and continuing contact. See *Commonwealth* v. *Franklin,* 366 Mass. 284, 293-294 (1974); *Commonwealth* v. *Happnie,* 3 Mass. App. Ct. 193, 195-198 (1975). Compare *Commonwealth* v. *Cobb,* 397 Mass. 105, 109 (1986). The possibility that Casenza would invoke his privilege against self-incrimination does not avail DeCastro, who could not invoke Casenza's privilege for him. *Commonwealth* v. *Spencer,* 212 Mass. 438, 450-453 (1912). A judge is not required to assume that a potential witness, shown to have relevant knowledge, will invoke a testimonial privilege. 2 Wigmore, Evidence § 286, at 167 (3d ed. 1940). If it is made to appear (preferably by proceedings outside the jury's presence) that he will in fact do so, the judge may not then permit inferences to be drawn against a party from his failure to call the witness. *Commonwealth* v. *Spencer,* 212 Mass. at 452. See also *Commonwealth* v. *Niziolek,* 380 Mass. 513, 518 (1980); *Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134-135, & nn.10 & 11 (1986); *Commonwealth* v. *Fulgham,* 23 Mass. App. Ct. 422, 426-427 (1987).

5. Santoro's motion for a required finding of not guilty on the trafficking offense was properly denied. In addition to the testimony of Michaud and a State trooper from which the jury could infer that Santoro took packages of cocaine to DeCastro's apartment for the sales on June 14 and July 19, there was evidence that Santoro, when arrested, was carrying on his person a supply of inositol (which a State trooper testified was commonly used to cut cocaine) and a list of names and dollar amounts of a type said by the trooper to be commonly associated with drug transactions. In the circumstances the jury could properly infer that Santoro, despite his

protestations, knew what the package he took to DeCastro's apartment on July 19 contained.

*Judgments affirmed.*

*Christopher D. Burke* for George T. DeCastro.
*Alan Karahalis* for William J. Santoro.
*David Grossbaum*, Assistant District Attorney, for the Commonwealth.