COMMONWEALTH *vs.* JOSEPH A. MEEHAN.

No. 91-P-1256.

Plymouth. May 12, 1992. - September 4, 1992.

Present: BROWN, PORADA, & LAURENCE, JJ.

*Controlled Substances. Practice, Criminal,* Required finding. *Joint Enterprise. Evidence,* Consciousness of guilt.

At the trial of an indictment for trafficking in cocaine, evidence of the defendant's involvement in an alleged joint venture to traffic in cocaine was insufficient as matter of law where, although the evidence suggested that the defendant may have been guilty of some offense, the Commonwealth offered no proof that the defendant either knew of the existence of a quantity of cocaine seized from his alleged joint venturer, or that he had the ability and intention to exercise dominion and control over it. [264-267]

INDICTMENT found and returned in the Superior Court Department on October 12, 1988.

The case was tried before *Cortland A. Mathers,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Paul C. Dawley,* Assistant District Attorney, for the Commonwealth.

BROWN, J. Following a jury trial, the defendant was convicted of trafficking in cocaine of a net weight of more than twenty-eight but less than 100 grams. See G. L. c. 94C, §32E(*b*). On appeal the defendant argues that the trial judge erred in denying his motion for a required finding of not guilty. See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). We agree and accordingly reverse the judgment of conviction.

In reviewing the defendant's claim of error we apply the familiar standard of *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). *Commonwealth* v. *Salemme,* 395 Mass.

594, 595 (1985). In keeping with our task, we describe the evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Casale*, 381 Mass. 167, 168 (1980).

On the night of July 29, 1988, members of the Plymouth police department executed a search warrant at Driscoll's Cafe in Plymouth. The defendant and the bartender, Priscilla Turk, were both targets of the search warrant. For a period of eighteen months prior to the execution of the warrant, police had conducted weekly surveillance of Driscoll's and, during that time, had observed the defendant there every Friday and Saturday night. On several occasions, the officers followed the defendant as he left Driscoll's, and the defendant would either go home to his apartment in Plymouth or to another bar, Maggie's Pub, down the street from Driscoll's.

State Trooper Richard Noone, an undercover narcotics investigator, was assigned to sit at the bar in Driscoll's between 8:00 and 11:00 P.M. on July 29, 1988, for the purpose of observing any narcotic transactions that might involve the two suspects. Prior to entering the bar, Noone had been given a description of Turk and had been shown a picture of the defendant. Noone testified that he first observed the defendant in Driscoll's that evening at approximately 9:30 or 10:00. The defendant was standing at the most heavily traveled area of the bar, the section where those seeking service from the bartender would stand. Between 10:00 and 11:00 P.M., Noone saw the defendant and Turk converse privately three times at the end of the bar where the defendant was standing. Both Turk and the defendant talked with their backs to the other patrons. Each conversation lasted about two or three minutes. Noone could not overhear these conversations.

At 11:05 P.M., several police officers entered Driscoll's to execute the warrant. Captain Robert Palmeroy approached Turk and ordered her to come around to the front of the bar. Palmeroy conducted a search of Turk's purse and found a plastic container with forty-four square paper folds of cocaine (later determined to weigh 39.32 grams), two plastic

containers of rice,[1] two sheets of paper containing names and numerical notations,[2] and $1,200 in cash.

Detective Curtis testified that his assignment on July 29, 1988, was to go into Driscoll's and "secure" the defendant. When Curtis approached the defendant, he asked him to place his hands on the bar. Curtis noticed that the defendant put his right hand into a puddle of beer on the bar. When he lifted his hand, the defendant left a crumpled slip of paper on the bar. The paper contained names and numbers, but was unlined and in different handwriting from that on the list taken from Turk's purse. Among the entries on the defendant's list were notations which said "Black guy, Maggie, 50" and "Black guy, Driscoll's, 20." Also found on the defendant during the search at the bar was $317 in cash.

The defendant was arrested and taken to the Plymouth police station. When told he would be strip-searched, the defendant pulled a large amount of cash ($4,630) from his crotch area.

The theory of the Commonwealth's case was that the defendant was involved in a joint enterprise with Turk to traffic in cocaine. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty.[3] To prove a joint venture, the Commonwealth was required to prove beyond a reasonable doubt that the defendant was "(1) present at the scene of the crime, (2) with knowledge that [Priscilla Turk] intend[ed] to commit the crime or with intent to commit a crime, and (3) by agreement [was] willing and available to help [Turk] if necessary." *Commonwealth* v. *Longo,*

---

[1]Testimony by Captain Palmeroy and Detective William Curtis revealed that rice is often used by cocaine dealers to absorb water and to keep moisture out of the cocaine.

[2]Both Captain Palmeroy and Trooper Noone testified that this type of list, known as a "cuff list," is almost always found when search warrants for drugs are executed. "Cuff lists" usually contain first names or nicknames and monetary amounts and are used to denote money owed to a narcotics dealer.

[3]Since we hold that the evidence at the close of the Commonwealth's case was insufficient to support a conviction, we need not consider the defendant's like motion filed at the close of all the evidence. See in this regard *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 n.1 (1976).

402 Mass. 482, 486 (1988), quoting from *Commonwealth* v. *Bianco*, 388 Mass. 358, 366 (1983).

The element of agreement or intent is an essential element to be proven in a joint venture case. *Commonwealth* v. *Longo*, 402 Mass. at 486-487 n.5. Although intent may be shown by circumstantial evidence (*Commonwealth* v. *Costa*, 407 Mass. 216, 225 [1990]), it is not enough to show merely the defendant's presence at the scene of the crime (*Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 780 [1991]), nor is it sufficient to show "the defendant's association with a person who controlled the contraband." *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 437 (1991), and cases cited.

The evidence in this case certainly "could have created suspicion about the defendant's activities." *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689 (1991). From the large amount of cash carried by the defendant in a concealed location one could infer that the defendant was engaged in activities "associated with drug dealing." *Ibid.* See also *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989). The defendant's possession of a list of names and dollar amounts of a type commonly associated with drug transactions (see note 2, *supra*) could contribute to an inference of an intent to distribute narcotics. See *Commonwealth* v. *DeCastro*, 24 Mass. App. Ct. 937, 939 (1987). In addition, the defendant's attempt to conceal the list of names and numbers when asked to place his hands on the bar is evidence of consciousness of guilt. See *Commonwealth* v. *Salemme*, 395 Mass. at 601; *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 427 (1985).

Even if we assume that all of this evidence, taken in its totality, establishes that the defendant was involved in illegal drug dealing, the Commonwealth, nonetheless, has not shown the required nexus between the defendant's activities and the 39.32 grams of cocaine found on Priscilla Turk. The only evidence offered by the Commonwealth which linked the defendant and Turk was the testimony of Trooper Noone that he observed three private conversations between the defendant and Turk during the course of a one-hour period. Noone

could not overhear these conversations, and none of the other evidence found on either Turk or the defendant provided the necessary link. See *Commonwealth* v. *Handy,* 30 Mass. App. Ct. at 782 (insufficient evidence linking defendant with cocaine seized or with apartment where drugs were found). Contrast *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990) (joint possession could be inferred from fact drugs were similar and packaged in an identical manner to drugs in apartment and the defendant's knowledge of contraband's presence in apartment); *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 613 (1976) (discovery of large quantity of heroin in various hidden locations in the defendant's apartment permitted an inference of constructive possession); *Commonwealth* v. *Arias,* 29 Mass. App. Ct. 613, 618-620 (1990), *S.C.,* 410 Mass. 1005 (1991). The lists of names and numbers found in the defendant's possession were not similar to those found in Turk's purse: The handwriting was different, the type of paper used was different, and the names and amounts were different. No drugs or drug paraphernalia were found on the defendant. Nothing in Turk's pocketbook provided evidence of a connection to the defendant. See and compare *Commonwealth* v. *Rivera,* 31 Mass. App. Ct. 554, 558 (1991) (no evidence of defendant's connection to large quantity of drugs in bedroom occupied by another resident). Contrast *Commonwealth* v. *Sabetti,* 411 Mass. 770, 777-780 (1992) (large amount of drug paraphernalia in car driven by the defendant, coupled with the defendant's knowledge of contents of bag containing cocaine, was sufficient to link defendant with narcotics in bag on back seat of car).

A conviction may not rest upon mere conjecture or surmise. See *Commonwealth* v. *Merola,* 405 Mass. 529, 533 (1989). "[T]o sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. at 677-678. See also

*Commonwealth* v. *Pope*, 406 Mass. 581, 584 (1990). Despite evidence suggesting that the defendant may have been guilty of some offense, there was no solid evidence linking him to the drugs seized at Driscoll's cafe. Nor did the Commonwealth offer any proof that the defendant either knew of the cocaine's existence or had the ability and intention to exercise dominion and control over it. See *Commonwealth* v. *Handy*, 30 Mass. App. Ct. at 782. We conclude that the evidence of the defendant's involvement with Priscilla Turk in a joint venture to traffic in cocaine was insufficient as matter of law.

The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for entry of a finding of not guilty of the trafficking offense charged under G. L. c. 94C, § 32E(*b*).

*So ordered.*