Joseph A. **MEEHAN**, Plaintiff, Appellant,

v.

**TOWN OF PLYMOUTH, et al.,**
Defendants, Appellees.

No. 97–2235.

United States Court of Appeals,
First Circuit.

Heard July 28, 1998.

Decided Feb. 3, 1999.

---

James R. McMahon III on brief, for appellant.

David C. Jenkins, with whom Dwyer & Jenkins was on brief, for appellees.

Before TORRUELLA, Chief Judge, WELLFORD,* Senior Circuit Judge, and LYNCH, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiff-appellant Joseph A. Meehan was arrested by Plymouth police officers William E. Curtis, John W. Rogers, Jr., and Robert J. Pomeroy during a drug raid in a local bar. Meehan was convicted in Massachusetts state court of trafficking in cocaine. On appeal, however, his conviction was overturned because the appeals court found that the evidence of Meehan's involvement in the particular joint venture to traffic in cocaine was insufficient as a matter of law. *See Commonwealth v. Meehan,* 33 Mass.App.Ct. 262, 597 N.E.2d 1384 (Mass.App.Ct.1992). Meehan then filed the present suit in the U.S. District Court for the District of Massachusetts against the Town of Plymouth (the "Town") and the three police officers, alleging, *inter alia,* federal and state malicious prosecution causes of action.

All of Meehan's causes of action except the state and federal malicious prosecution claims were dismissed on statute of limita-

* Of the Sixth Circuit, sitting by designation.

tions grounds. Then, in a Memorandum and Order dated August 20, 1997, the district court: (1) granted the Town's motion to dismiss Meehan's remaining claims against it; and (2) granted the individual officer-defendants' motion for summary judgment on the remaining claims against them. *See* August 20, 1997 Memorandum and Order, at 12, 20. Meehan appeals, and we affirm.

## BACKGROUND

In reviewing the entry of summary judgment under Fed.R.Civ.P. 56(c), we view the facts in the light most favorable to the non-moving party—Meehan in this case. *See Iglesias v. Mutual Life Ins. Co. of New York*, 156 F.3d 237, 239 (1st Cir.1998).[1]

Joseph A. Meehan was arrested on the night of July 29, 1988, at Driscoll's Cafe in Plymouth, Massachusetts. Earlier that day, a state judge issued a warrant for the search of Driscoll's Cafe on the basis of defendant Curtis' affidavit. In his affidavit, Curtis stated that the Plymouth police department believed that Meehan and Priscilla Turk, a bartender at Driscoll's Cafe, were selling cocaine at the establishment. This belief was based upon tips from confidential informants and direct surveillance of Meehan over. a period of approximately two years.

Prior to the execution of the search warrant, undercover police officer Richard Noone entered the bar and observed Meehan and Turk engage in three short conversations. Noone did not, however, witness any drug transactions. Noone then left the bar and called the police station to report what he had seen. Minutes afterwards, defendants Curtis, Pomeroy, and Rogers conducted the raid on Driscoll's Cafe. After entering the bar, the officers arrested Meehan and Turk and conducted a pat-down search on them. During that search, the officers found a package of cocaine in one of Turk's pockets, but they did not find any drugs in Meehan's possession. The officers found approximate-

ly three hundred dollars on Meehan's person. The officers also claim to have found a "cuff list" in Meehan's possession, although Meehan disputes that the "cuff list" was found on him.[2] Meehan claims that the "cuff list" did not belong to him and was planted nearby him by Pomeroy. Meehan also claims that Curtis' testimony regarding the "cuff list" was inconsistent, noting that Curtis testified to the grand jury that it was found in Meehan's pocket, but testified at Meehan's criminal trial that he found it in a puddle of beer on the bar, underneath Meehan's hand.

Meehan was taken to the police station, where he was strip-searched. The officers found a wad of approximately four thousand dollars inside the waistband of his pants. Three days later, Pomeroy completed and executed an Application for Criminal Complaint, charging Meehan in Plymouth District Court with trafficking in cocaine, possession of cocaine, and possession of cocaine with intent to distribute. Pomeroy later filed a Criminal Complaint in Superior Court against Meehan charging the three counts described above. After Meehan was indicted by a Plymouth County grand jury of a single count of trafficking in a controlled substance, the Plymouth District Court action was dismissed.

After trial in the Superior Court, a jury found Meehan guilty on the trafficking charge, and he was sentenced to five years in state prison. In September 1992, however, the Appeals Court of Massachusetts reversed his conviction with instructions to the trial court to enter a verdict of not guilty. *See Meehan*, 597 N.E.2d at 1387. The court found that although there was sufficient evidence to support a finding that Meehan was involved in drug transactions in general, the evidence was not sufficient to permit a jury to find beyond a reasonable doubt that Meehan was involved in a joint venture with Turk to sell the particular cocaine that was found on her person on July 29, 1988. *See id.*

---

1. We refer readers desiring a fuller exposition of the facts to the district court's Memorandum and Order, as well as to the opinion of the Appeals Court of Massachusetts reversing Meehan's conviction. *See* August 20, 1997 Memorandum and Order, at 2–5; *Commonwealth v. Meehan*, 33

Mass.App.Ct. 262, 597 N.E.2d 1384, 1385–86 (Mass.App.Ct.1992).

2. A "cuff list" is a list of drug customers and the amounts they owe to the dealer.

After his conviction was reversed, Meehan filed suit in the U.S. District Court for the District of Massachusetts against the individual officers who carried out his arrest, as well as against the Town of Plymouth. The complaint raised a variety of state and federal claims, including malicious prosecution in violation of both Massachusetts law, Mass. Gen. Laws ch. 258, § 10(b), and the Civil Rights Act of 1870, 42 U.S.C. § 1983. All of Meehan's claims were dismissed on statute of limitations grounds, except Meehan's federal and state malicious prosecution causes of action.

The Town moved to dismiss Meehan's malicious prosecution claims against it, and the individual officer-defendants moved for summary judgment on the malicious prosecution claims against them. The district court granted both motions in its August 20, 1997 Memorandum and Order. The court dismissed the claims against the Town of Plymouth because it found that Meehan asserted no theory that sufficiently stated a claim for malicious prosecution against the Town. *See* August 20, 1997 Memorandum and Order, at 12. The court entered summary judgment in favor of the individual officer-defendants following its determination that Meehan could not establish one of the essential elements of the claim for malicious prosecution—the absence of probable cause—because Meehan's jury conviction conclusively demonstrated that the officers had probable cause for Meehan's arrest. *See id.* at 20. Meehan appeals, and we affirm.

## DISCUSSION

We affirm the entry of summary judgment substantially for the reasons expressed by the district court in its Memorandum and Order. We pause to add only the following.

## I. Malicious Prosecution

■ Meehan raised malicious prosecution claims under Massachusetts and federal law. In order to succeed on his malicious prosecution claim under 42 U.S.C. § 1983, Meehan must prove: (1) state action; and (2) a deprivation of constitutional rights. *See Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d 249, 253–54 (1st Cir.1996).

## A. Constitutional Basis For Meehan's Federal Malicious Prosecution Action

■ We note as an initial matter that Meehan's § 1983 malicious prosecution claim is not properly based on either a procedural or substantive due process violation. A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action. *See Roche*, 81 F.3d at 256; *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 42–43 (1st Cir.1994). Further, "[t]here is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution." *Roche*, 81 F.3d at 256 (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion)); *see also Perez–Ruiz*, 25 F.3d at 42 ("*Albright* would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983....").

However, there is a possibility that Meehan's § 1983 malicious prosecution claim may be actionable under the Fourth Amendment. *See, e.g., Albright*, 510 U.S. at 271, 114 S.Ct. 807 (plurality opinion) ("We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim [under § 1983 that he was prosecuted without probable cause] must be judged."); *Roche*, 81 F.3d at 256 n. 5 ("[T]he Supreme Court left open the possibility that a malicious prosecution claim might lie under § 1983 on the basis of the Fourth Amendment...."); *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 3–4 (1st Cir.1995). In fact, the district court proceeded under the assumption that Meehan's § 1983 malicious prosecution claim pleaded a deprivation of Fourth Amendment rights. *See* August 20, 1997 Memorandum and Order, at 15. As Meehan has provided no further argument on this question, this Court will treat his § 1983 claim similarly.

## B. "Absence of Probable Cause" Element

■ In order to state a cause of action for malicious prosecution, a plaintiff must

allege that "criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor." *Landrigan v. City of Warwick,* 628 F.2d 736, 745 n. 6 (1st Cir.1980) (citation omitted). Thus, a § 1983 malicious prosecution action based upon a deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate proceedings, *see Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998), as does the parallel state tort claim of malicious prosecution, *see, e.g., Lincoln v. Shea,* 361 Mass. 1, 277 N.E.2d 699, 702 (Mass.1972).

### 1. The Appropriate Probable Cause Inquiry

Before we proceed any further, we feel compelled to delineate exactly what Meehan's § 1983 malicious prosecution claims consist of, in order to more easily undertake the proper probable cause inquiry. The district court stated that an element of Meehan's malicious prosecution cause of action was that there was no probable cause to initiate the criminal charge against Meehan, but what the court purported to find was that it had been conclusively determined that defendants had probable cause to arrest Meehan. August 20, 1997 Memorandum and Order, at 16, 18. For the following reasons, we believe that the proper inquiry in this case is whether the defendants had probable cause to initiate the criminal charge against Meehan, not whether they had probable cause to arrest him.

From Meehan's arguments throughout this litigation, it is clear that he attempts to raise dual malicious prosecution claims based upon two events: (1) his arrest; and (2) his prosecution. As early as his opposition to the motion to dismiss the first amended complaint, Meehan argued that his malicious prosecution causes of action were based upon

the malicious "arrest and prosecution" by defendants. Plaintiff's Opposition to Defendants' Motion to Dismiss, at 10. In his second amended complaint, Meehan continued with these dual bases for his malicious prosecution claims, repeatedly arguing that defendants "arrested and charged" Meehan without probable cause and that "[t]he arrest and prosecution" violated his constitutional rights. Second Amended Complaint, ¶¶ 88–91. In his brief on appeal, Meehan argues that:

> [a]n arrest is the initial stage of a criminal prosecution, and the Application for Criminal Complaint and the Complaint itself is the issuance of criminal process and the institution of criminal proceedings. Pomeroy drafted and executed the Application for the Criminal Complaint, thereby instituting this criminal process knowing he had no probable cause.

Appellant's Br. at 34. Meehan continues:

> Rogers clearly instituted or instigated this criminal process with the arrest without probable cause. Rogers knew that Meehan had no cocaine on him at both times when Meehan was searched. Accordingly, there was absolutely no probable cause to arrest and charge Meehan with any crime.

Appellant's Br. at 37.

■ However, Meehan may not bring a malicious prosecution claim based upon his arrest because his arrest does not constitute the "initiation of proceedings" against Meehan. We have previously noted that the lines between malicious prosecution and false arrest have become blurred, to the extent that a malicious prosecution claim may be predicated on an arrest made pursuant to a warrant that was issued without probable cause. *See Calero–Colon,* 68 F.3d at 3–4. In the present case, however, Meehan's arrest was not made pursuant to an arrest warrant.[3]

---

3. Meehan's arrest was made during the execution of a search warrant, but Meehan does not base his malicious prosecution claim on the issuance of the search warrant. Instead, Meehan claims, without authority, that his *arrest* constituted the initiation of process necessary for a malicious prosecution cause of action. While a malicious prosecution claim could conceivably be predicated upon the issuance of a search warrant, we are not inclined to consider such a claim because Meehan does not even articulate one. Rather, Meehan repeatedly argues that it is the *arrest* that constitutes the initial stage of prosecution and that probable cause for the *arrest* was lacking. Meehan has thus waived any argument that the issuance of the search warrant is the "initiation of proceedings" against him that was done maliciously and without probable cause.

Meehan cites no authority for the proposition that a malicious prosecution cause of action may be based upon a warrantless arrest. As we noted in *Calero–Colon:*

[t]he critical inquiry that distinguishes malicious prosecution from false arrest in the present context is whether the arrests were made pursuant to a warrant. As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. *An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process.* On the other hand, wrongful warrantless arrests typically resemble the tort of false arrest.

*Id.* at 4 (citations omitted)(emphasis added). Meehan cannot base a malicious prosecution claim on his warrantless arrest, because it did not constitute legal process. Consequently, we examine only Meehan's malicious prosecution claims based upon the institution of criminal charges against him. Because the "absence of probable cause" element is concerned with whether the defendants had probable cause to take the challenged action, and because the challenged action here is prosecution, not arrest, the proper inquiry is whether there was probable cause to institute criminal charges against Meehan.

### 2. Meehan's State Law Malicious Prosecution Claim

In the present case, the district court found that probable cause existed, thereby defeating Meehan's state and federal malicious prosecution causes of action. The district court found, under the rule in *Broussard v. Great Atlantic & Pacific Tea Co.,* 324 Mass. 323, 86 N.E.2d 439, 440 (Mass.1949), that it had been conclusively determined that

probable cause existed to arrest Meehan.[4] In *Broussard,* the Supreme Judicial Court of Massachusetts held that:

the law of this Commonwealth has been that conviction of the accused by a tribunal to which the complaint was made, although reversed on appeal, conclusively establishes the existence of probable cause, unless the conviction was obtained solely by false testimony of the defendant charged with malicious prosecution or is impeached on the ground of fraud, conspiracy or subornation in its procurement.

*Id.* at 440 (citations and internal quotation marks omitted).

We agree with the district court's application of the *Broussard* rule with regard to Meehan's state law malicious prosecution cause of action. Meehan was clearly convicted of trafficking in cocaine, even though his conviction was reversed. Thus, unless the "false testimony" exception applies, *Broussard* operates to bar Meehan's state law malicious prosecution claim.

Meehan has not succeeded in creating a genuine issue of fact as to whether his conviction was obtained solely by the false testimony of the defendants. First, Meehan has not provided sufficient admissible evidence that defendants' testimony was in fact false. Meehan's claims that the defendants perjured themselves tend to be conclusory. Meehan's brief on appeal is replete with assertions that Curtis' affidavit and testimony were perjured because, for example, even though Meehan had never sold drugs of any kind, Curtis stated that various reliable informants had seen him selling cocaine at Driscoll's Cafe. Accepting for the sake of argument Meehan's claim that he has never sold drugs, this fact still does not establish that Curtis perjured himself, but only that the

---

4. We are not concerned that the district court concluded that there was probable cause to arrest Meehan, rather than to prosecute him. For two reasons, it is clear that any error in this regard occurred only in the district court's mode of expression. First, the district court's finding that defendants had probable cause to arrest Meehan was made in the context of examining the third element of the malicious prosecution claims, which the court had already stated was the absence of probable cause to initiate a crimi-

nal charge. Second, the district court applied the *Broussard* rule, which does not result in a finding of probable cause to arrest. We have noted before that the *Broussard* rule is one that provides a conclusive determination of probable cause to initiate a prosecution, not to arrest. *See Earle v. Benoit,* 850 F.2d 836, 849 (1st Cir.1988). Therefore, despite the apparent misstep in the phrasing of the probable cause inquiry, the district court's analysis was the correct one.

informants that Curtis relied on were not as reliable as he thought them to be. Similarly, in response to Curtis' testimony that there were numerous drug-related arrests of Driscoll's Cafe patrons before Meehan's arrest, Meehan argues in his brief that he knows this statement to be untrue. However, he makes no effort to offer evidence that contradicts Curtis' testimony and therefore fails to demonstrate that Curtis' testimony in this regard was false.

Second, even if Meehan could demonstrate that every piece of testimony he attacks was in fact perjured, he still could not demonstrate that his conviction was based solely on that testimony. As demonstrated more fully in the next section, there was substantial undisputed evidence that implicated Meehan in the crime of which he was convicted. That undisputed evidence includes Meehan's association with Turk, his possession of large amounts of currency, and the discovery of a "cuff list" either on Meehan's person or relatively near him in the bar. Accordingly, no reasonable fact-finder could conclude that Meehan's conviction was based solely on the false testimony of the defendants. Therefore, the exception to the *Broussard* rule does not apply, and the district court was correct in granting summary judgment against Meehan's state law malicious prosecution claim.

### 3. Meehan's § 1983 Malicious Prosecution Claim

We do not believe, however, that the district court was correct in entering summary judgment against Meehan's § 1983 malicious prosecution cause of action on the basis of *Broussard*. The district court applied *Broussard* in the federal context, but *Broussard*'s applicability to § 1983 malicious prosecution claims has heretofore been left unresolved in this circuit. *See Earle v. Benoit*, 850 F.2d 836, 850 n. 14 (1st Cir.1988)

(expressing doubt, but leaving open the question of whether the *Broussard* rule would be dispositive as to the constitutionally mandated probable cause standard). Because the undisputed facts of this case demonstrate that the defendants had probable cause to initiate the criminal charge against Meehan, we find it unnecessary to reach that issue and leave it for another day.

We find that no genuine issue exists regarding the question of whether defendants had probable cause to prosecute Meehan. Even if we disregard the testimony of the officers that Meehan disputes as perjured,[5] including testimony that the "cuff list" belonged to Meehan, there was still probable cause to prosecute Meehan. It is undisputed that Meehan had frequented Driscoll's Cafe over a long period of time. It is undisputed that substantial amounts of illegal narcotics activity had been taking place at Driscoll's Cafe.[6] It is undisputed that Meehan was seen associating with Turk, who was undeniably in possession of cocaine, on the night of his arrest. It becomes even more likely that Meehan was involved in that trafficking activity when one considers the undisputed fact that Meehan carried thousands of dollars in a concealed location at the time of his arrest. Even the appellate court that reversed Meehan's conviction noted that one could infer from this concealed currency that Meehan was engaged in activities associated with drug dealing. *See Meehan*, 597 N.E.2d at 1386. Even though this evidence was held to be insufficient to establish beyond a reasonable doubt that Meehan was conspiring with Turk to traffic the cocaine that was found in her possession, it is at least enough to establish probable cause to believe that he had done so. *Cf. Roche*, 81 F.3d at 255 ("[T]he quantity and quality of proof necessary to ground a showing of probable cause is not the same as the quantity and quality of proof necessary to convict."). Because there was

5. As noted in the previous section, Meehan's claims that the defendants perjured themselves tend to be conclusory and unsupported by evidence. Therefore, even though we disregard the allegedly perjured testimony in compiling the undisputed evidence that supports a finding of probable cause, it is not at all clear that such disregard is necessary for each "disputed" item.

6. At pages 8 and 9 of his brief, Meehan disputes (again without any supporting evidence) Curtis' statement that numerous arrests had taken place at Driscoll's for drug violations, but nowhere does Meehan dispute the fact that Driscoll's was known to be a hotbed of illegal narcotics activity.

probable cause to believe that Meehan was involved in drug trafficking at the time he was charged with that crime, the district court properly granted summary judgment against both his state and federal malicious prosecution claims.[7]

## II. Claims Against the Town of Plymouth

 Meehan claims that the Town was liable for its officers' actions under 42 U.S.C. § 1983 because it had failed to properly train and supervise them. As the Supreme Court has stated, however, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Because the complaint fails to allege that the failure to train was deliberate, or that it was directly and causally linked to the alleged violation of Meehan's civil rights, the claim was properly dismissed.[8]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Meehan's complaint against Plymouth and the district court's grant of summary judgment in favor of the individual defendants.

---

7. Embedded in Meehan's claims that the defendants are all lying in order to establish probable cause is an argument that Meehan was denied access to evidence that could have helped him stave off summary judgment. Meehan served interrogatories upon Curtis asking him to specify the sources of the information on which he based his affidavit in support of the application for a search warrant. Curtis responded by objecting to the disclosure of the identity of his confidential informants. Meehan now contends that the answers to the interrogatories were necessary to oppose defendants' motion for summary judgment. This contention comes too late. Federal Rule of Civil Procedure 56(f) provides an avenue for a party who cannot present "facts essential to justify the party's opposition" due to lack of discovery, but such a motion: (1) "must be made within a reasonable time following the receipt of a motion for summary judgment," *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 44 (1st Cir.1998); *see also Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 109 (1st Cir.1997) ("Rule 56(f) ... specifically calls upon a litigant who feels prejudiced by too precipitate a demand for summary judgment to file a timely affidavit with the court asserting the need for further discovery. As we have held, failure to resort to such first aid will ordinarily bar belated aid."); and (2) "must ask the court to refrain from acting on the summary judgment request until additional discovery can be conducted," *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 44 (1st Cir.1998). Meehan did not file a timely Rule 56(f) affidavit, so this issue is waived.

8. Meehan devotes considerable energy to arguing that the Town failed to supervise the defendants after his arrest and prosecution. However, he has no standing to complain about any alleged failure to supervise that was not related to his arrest and/or prosecution. Thus, his claim depends on evidence that the Town was aware of the defendants' lack of training *prior* to his arrest. Meehan failed to allege the existence of such evidence.