<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2235

                       JOSEPH A. MEEHAN,

                     Plaintiff, Appellant,

                               v.

                   TOWN OF PLYMOUTH, ET AL.,

                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

        [Hon. Douglas P. Woodlock, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

Wellford, Senior Circuit Judge,

                   and Lynch, Circuit Judge.

                     _____________________

    James R. McMahon III on brief, for appellant.
    David C. Jenkins, with whom Dwyer & Jenkins was on brief, for
appellees.

                      ____________________

                       February 3, 1999
                      ____________________

         TORRUELLA, Chief Judge.  Plaintiff-appellant Joseph A.
Meehan was arrested by Plymouth police officers William E. Curtis,
John W. Rogers, Jr., and Robert J. Pomeroy during a drug raid in a
local bar.  Meehan was convicted in Massachusetts state court of
trafficking in cocaine.  On appeal, however, his conviction was
overturned because the appeals court found that the evidence of
Meehan's involvement in the particular joint venture to traffic in
cocaine was insufficient as a matter of law.  See Commonwealth v.
Meehan, 597 N.E.2d 1384 (Mass. App. Ct. 1992).  Meehan then filed
the present suit in the U.S. District Court for the District of
Massachusetts against the Town of Plymouth (the "Town") and the
three police officers, alleging, inter alia, federal and state
malicious prosecution causes of action.   
         All of Meehan's causes of action except the state and
federal malicious prosecution claims were dismissed on statute of
limitations grounds.  Then, in a Memorandum and Order dated August
20, 1997, the district court: (1) granted the Town's motion to
dismiss Meehan's remaining claims against it; and (2) granted the
individual officer-defendants' motion for summary judgment on the
remaining claims against them.  See August 20, 1997 Memorandum and
Order, at 12, 20.  Meehan appeals, and we affirm.
                          BACKGROUND
         In reviewing the entry of summary judgment under Fed. R.
Civ. P. 56(c), we view the facts in the light most favorable to the
non-moving party -- Meehan in this case.  See Iglesias v. Mutual
Life Ins. Co. of New York, 156 F.3d 237, 239 (1st Cir. 1998).
    Joseph A. Meehan was arrested on the night of July 29,
1988, at Driscoll's Cafe in Plymouth, Massachusetts.  Earlier that
day, a state judge issued a warrant for the search of Driscoll's  
Cafe on the basis of defendant Curtis' affidavit.  In his
affidavit, Curtis stated that the Plymouth police department
believed that Meehan and Priscilla Turk, a bartender at Driscoll's
Cafe, were selling cocaine at the establishment.  This belief was
based upon tips from confidential informants and direct
surveillance of Meehan over a period of approximately two years.
    Prior to the execution of the search warrant, undercover
police officer Richard Noone entered the bar and observed Meehan
and Turk engage in three short conversations.  Noone did not,
however, witness any drug transactions.  Noone then left the bar
and called the police station to report what he had seen.  Minutes
afterwards, defendants Curtis, Pomeroy, and Rogers conducted the
raid on Driscoll's Cafe.  After entering the bar, the officers
arrested Meehan and Turk and conducted a pat-down search on them.  
During that search, the officers found a package of cocaine in one
of Turk's pockets, but they did not find any drugs in Meehan's
possession.  The officers found approximately three hundred dollars
on Meehan's person.  The officers also claim to have found a "cuff
list" in Meehan's possession, although Meehan disputes that the
"cuff list" was found on him.  Meehan claims that the "cuff list"
did not belong to him and was planted nearby him by Pomeroy.  
Meehan also claims that Curtis' testimony regarding the "cuff list"
was inconsistent, noting that Curtis testified to the grand jury
that it was found in Meehan's pocket, but testified at Meehan's
criminal trial that he found it in a puddle of beer on the bar,
underneath Meehan's hand.  
    Meehan was taken to the police station, where he was
strip-searched.  The officers found a wad of approximately four
thousand dollars inside the waistband of his pants.  Three days
later, Pomeroy completed and executed an Application for Criminal
Complaint, charging Meehan in Plymouth District Court with
trafficking in cocaine, possession of cocaine, and possession of
cocaine with intent to distribute.  Pomeroy later filed a Criminal
Complaint in Superior Court against Meehan charging the three
counts described above.  After Meehan was indicted by a Plymouth
County grand jury of a single count of trafficking in a controlled
substance, the Plymouth District Court action was dismissed.
    After trial in the Superior Court, a jury found Meehan
guilty on the trafficking charge, and he was sentenced to five
years in state prison.  In September 1992, however, the Appeals
Court of Massachusetts reversed his conviction with instructions to
the trial court to enter a verdict of not guilty.  See Meehan, 597
N.E.2d at 1387.  The court found that although there was sufficient
evidence to support a finding that Meehan was involved in drug
transactions in general, the evidence was not sufficient to permit
a jury to find beyond a reasonable doubt that Meehan was involved
in a joint venture with Turk to sell the particular cocaine that
was found on her person on July 29, 1988.  See id.  
    After his conviction was reversed, Meehan filed suit in
the U.S. District Court for the District of Massachusetts against
the individual officers who carried out his arrest, as well as
against the Town of Plymouth.  The complaint raised a variety of
state and federal claims, including malicious prosecution in
violation of both Massachusetts law, Mass. Gen. Laws ch. 258,
10(b), and the Civil Rights Act of 1870, 42 U.S.C.  1983.  All of
Meehan's claims were dismissed on statute of limitations grounds,
except Meehan's federal and state malicious prosecution causes of
action.   
    The Town moved to dismiss Meehan's malicious prosecution
claims against it, and the individual officer-defendants moved for
summary judgment on the malicious prosecution claims against them.  
The district court granted both motions in its August 20, 1997
Memorandum and Order. The court dismissed the claims against the
Town of Plymouth because it found that Meehan asserted no theory
that sufficiently stated a claim for malicious prosecution against
the Town.  See August 20, 1997 Memorandum and Order, at 12.  The
court entered summary judgment in favor of the individual officer-
defendants following its determination that Meehan could not
establish one of the essential elements of the claim for malicious
prosecution -- the absence of probable cause -- because Meehan's
jury conviction conclusively demonstrated that the officers had
probable cause for Meehan's arrest.  See id. at 20.  Meehan
appeals, and we affirm.
                          DISCUSSION
    We affirm the entry of summary judgment substantially for
the reasons expressed by the district court in its Memorandum and
Order.  We pause to add only the following.
I.  Malicious Prosecution
    Meehan raised malicious prosecution claims under
Massachusetts and federal law.  In order to succeed on his
malicious prosecution claim under 42 U.S.C.  1983, Meehan must
prove: (1) state action; and (2) a deprivation of constitutional
rights.  See Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d
249, 253-54 (1st Cir. 1996).
    A.   Constitutional Basis For Meehan's Federal Malicious
         Prosecution Action
    We note as an initial matter that Meehan's  1983
malicious prosecution claim is not properly based on either a
procedural or substantive due process violation.  A  1983 claim
for malicious prosecution as a deprivation of procedural due
process is barred where, as here, the state's tort law recognizes
a malicious prosecution cause of action.  See Roche, 81 F.3d at
256; Prez-Ruiz v. Crespo-Guilln, 25 F.3d 40, 42-43 (1st Cir.
1994).  Further, "[t]here is no substantive due process right under
the Fourteenth Amendment to be free from malicious prosecution."  
Roche, 81 F.3d at 256 (citing Albright v. Oliver, 510 U.S. 266, 271
(1994) (plurality opinion)); see also Prez-Ruiz, 25 F.3d at 42
("Albright would appear virtually to foreclose reliance on
substantive due process as the basis for a viable malicious
prosecution claim under section 1983 . . . .").
    However, there is a possibility that Meehan's  1983
malicious prosecution claim may be actionable under the Fourth
Amendment.  See, e.g., Albright, 510 U.S. at 271 (plurality
opinion) ("We hold that it is the Fourth Amendment, and not
substantive due process, under which petitioner Albright's claim
[under  1983 that he was prosecuted without probable cause] must
be judged."); Roche, 81 F.3d at 256 n.5 ("[T]he Supreme Court left
open the possibility that a malicious prosecution claim might lie
under  1983 on the basis of the Fourth Amendment . . . .");
Calero-Coln v. Betancourt-Lebrn, 68 F.3d 1, 3-4 (1st Cir. 1995).
In fact, the district court proceeded under the assumption that
Meehan's  1983 malicious prosecution claim pleaded a deprivation
of Fourth Amendment rights.  See August 20, 1997 Memorandum and
Order, at 15.  As Meehan has provided no further argument on this
question, this Court will treat his  1983 claim similarly.
    B.   "Absence of Probable Cause" Element
    In order to state a cause of action for malicious
prosecution, a plaintiff must allege that "criminal proceedings
were initiated against him without probable cause and for an
improper purpose and were terminated in his favor."  Landrigan v.
City of Warwick, 628 F.2d 736, 745 n.6 (1st Cir. 1980) (citation
omitted).  Thus, a  1983 malicious prosecution action based upon
a deprivation of Fourth Amendment rights requires a showing of the
absence of probable cause to initiate proceedings, see Montgomeryv. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), as does the
parallel state tort claim of malicious prosecution, see, e.g.,
Lincoln v. Shea, 277 N.E.2d 699, 702 (Mass. 1972).  
         1.   The Appropriate Probable Cause Inquiry
    Before we proceed any further, we feel compelled to
delineate exactly what Meehan's  1983 malicious prosecution claims
consist of, in order to more easily undertake the proper probable
cause inquiry.  The district court stated that an element of
Meehan's malicious prosecution cause of action was that there was
no probable cause to initiate the criminal charge against Meehan,
but what the court purported to find was that it had been
conclusively determined that defendants had probable cause to
arrest Meehan.  August 20, 1997 Memorandum and Order, at 16, 18.  
For the following reasons, we believe that the proper inquiry in
this case is whether the defendants had probable cause to initiate
the criminal charge against Meehan, not whether they had probable
cause to arrest him.
    From Meehan's arguments throughout this litigation, it is
clear that he attempts to raise dual malicious prosecution claims
based upon two events: (1) his arrest; and (2) his prosecution.  As
early as his opposition to the motion to dismiss the first amended
complaint, Meehan argued that his malicious prosecution causes of
action were based upon the malicious "arrest and prosecution" by
defendants. Plaintiff's Opposition to Defendants' Motion to
Dismiss, at 10.  In his second amended complaint, Meehan continued
with these dual bases for his malicious prosecution claims,
repeatedly arguing that defendants "arrested and charged" Meehan
without probable cause and that "[t]he arrest and prosecution"
violated his constitutional rights.  Second Amended Complaint,
88-91.  In his brief on appeal, Meehan argues that:  
    [a]n arrest is the initial stage of a criminal
    prosecution, and the Application for Criminal
    Complaint and the Complaint itself is the
    issuance of criminal process and the
    institution of criminal proceedings. Pomeroy
    drafted and executed the Application for the
    Criminal Complaint, thereby instituting this
    criminal process knowing he had no probable
    cause.   

Appellant's Br. at 34.  Meehan continues:
    Rogers clearly instituted or instigated this
    criminal process with the arrest without
    probable cause.  Rogers knew that Meehan had
    no cocaine on him at both times when Meehan
    was searched.  Accordingly, there was
    absolutely no probable cause to arrest and
    charge Meehan with any crime.

Appellant's Br. at 37.
    However, Meehan may not bring a malicious prosecution
claim based upon his arrest because his arrest does not constitute
the "initiation of proceedings" against Meehan.  We have previously
noted that the lines between malicious prosecution and false arrest
have become blurred, to the extent that a malicious prosecution
claim may be predicated on an arrest made pursuant to a warrant
that was issued without probable cause.  See Calero-Coln, 68 F.3d
at 3-4.  In the present case, however, Meehan's arrest was not made
pursuant to an arrest warrant.  Meehan cites no authority for the
proposition that a malicious prosecution cause of action may be
based upon a warrantless arrest.  As we noted in Calero-Coln:  
    [t]he critical inquiry that distinguishes
    malicious prosecution from false arrest in the
    present context is whether the arrests were
    made pursuant to a warrant.  As a general
    rule, an unlawful arrest pursuant to a warrant
    will be more closely analogous to the common
    law tort of malicious prosecution.  An arrest
    warrant constitutes legal process, and it is
    the tort of malicious prosecution that permits
    damages for confinement pursuant to legal
    process.  On the other hand, wrongful
    warrantless arrests typically resemble the
    tort of false arrest.
Id. at 4 (citations omitted)(emphasis added).  Meehan cannot base
a malicious prosecution claim on his warrantless arrest, because it
did not constitute legal process.  Consequently, we examine only
Meehan's malicious prosecution claims based upon the institution of
criminal charges against him.  Because the "absence of probable
cause" element is concerned with whether the defendants had
probable cause to take the challenged action, and because the
challenged action here is prosecution, not arrest, the proper
inquiry is whether there was probable cause to institute criminal
charges against Meehan.
         2.   Meehan's State Law Malicious Prosecution Claim
    In the present case, the district court found that
probable cause existed, thereby defeating Meehan's state and
federal malicious prosecution causes of action.  The district court
found, under the rule in Broussard v. Great Atlantic & Pacific Tea
Co., 86 N.E.2d 439, 440 (Mass. 1949), that it had been conclusively
determined that probable cause existed to arrest Meehan.  In
Broussard, the Supreme Judicial Court of Massachusetts held that:
    the law of this Commonwealth has been that
    conviction of the accused by a tribunal to
    which the complaint was made, although
    reversed on appeal, conclusively establishes
    the existence of probable cause, unless the
    conviction was obtained solely by false
    testimony of the defendant charged with
    malicious prosecution or is impeached on the
    ground of fraud, conspiracy or subornation in
    its procurement.
Id. at 440 (citations and internal quotation marks omitted).   
    We agree with the district court's application of the
Broussard rule with regard to Meehan's state law malicious
prosecution cause of action.  Meehan was clearly convicted of
trafficking in cocaine, even though his conviction was reversed.
Thus, unless the "false testimony" exception applies, Broussardoperates to bar Meehan's state law malicious prosecution claim.   
    Meehan has not succeeded in creating a genuine issue of
fact as to whether his conviction was obtained solely by the false
testimony of the defendants.  First, Meehan has not provided
sufficient admissible evidence that defendants' testimony was in
fact false.  Meehan's claims that the defendants perjured
themselves tend to be conclusory.  Meehan's brief on appeal is
replete with assertions that Curtis' affidavit and testimony were
perjured because, for example, even though Meehan had never sold
drugs of any kind, Curtis stated that various reliable informants
had seen him selling cocaine at Driscoll's Cafe.  Accepting for the
sake of argument Meehan's claim that he has never sold drugs, this
fact still does not establish that Curtis perjured himself, but
only that the informants that Curtis relied on were not as reliable
as he thought them to be.  Similarly, in response to Curtis'
testimony that there were numerous drug-related arrests of
Driscoll's Cafe patrons before Meehan's arrest, Meehan argues in
his brief that he knows this statement to be untrue.  However, he
makes no effort to offer evidence that contradicts Curtis'
testimony and therefore fails to demonstrate that Curtis' testimony
in this regard was false.
    Second, even if Meehan could demonstrate that every piece
of testimony he attacks was in fact perjured, he still could not
demonstrate that his conviction was based solely on that testimony.  
As demonstrated more fully in the next section, there was
substantial undisputed evidence that implicated Meehan in the crime
of which he was convicted.  That undisputed evidence includes
Meehan's association with Turk, his possession of large amounts of
currency, and the discovery of a "cuff list" either on Meehan's
person or relatively near him in the bar.  Accordingly, no
reasonable fact-finder could conclude that Meehan's conviction was
based solely on the false testimony of the defendants.  Therefore,
the exception to the Broussard rule does not apply, and the
district court was correct in granting summary judgment against
Meehan's state law malicious prosecution claim.
         3.   Meehan's  1983 Malicious Prosecution Claim
    We do not believe, however, that the district court was
correct in entering summary judgment against Meehan's  1983
malicious prosecution cause of action on the basis of Broussard.  
The district court applied Broussard in the federal context without
explanation, but Broussard's applicability to  1983 malicious
prosecution claims has heretofore been left unresolved in this
circuit.  See Earle v. Benoit, 850 F.2d 836, 850 n.14 (1st Cir.
1988) (expressing doubt, but leaving open the question of whether
the Broussard rule would be dispositive as to the constitutionally
mandated probable cause standard).  Because the undisputed facts of
this case demonstrate that the defendants had probable cause to
initiate the criminal charge against Meehan, we find it unnecessary
to reach that issue and leave it for another day.
    We find that no genuine issue exists regarding the
question of whether defendants had probable cause to prosecute
Meehan.  Even if we disregard the testimony of the officers that
Meehan disputes as perjured, including testimony that the "cuff
list" belonged to Meehan, there was still probable cause to
prosecute Meehan.  It is undisputed that Meehan had frequented
Driscoll's Cafe over a long period of time.  It is undisputed that
substantial amounts of illegal narcotics activity had been taking
place at Driscoll's Cafe.  It is undisputed that Meehan was seen
associating with Turk, who was undeniably in possession of cocaine,
on the night of his arrest.  It becomes even more likely that
Meehan was involved in that trafficking activity when one considers
the undisputed fact that Meehan carried thousands of dollars in a
concealed location at the time of his arrest.  Even the appellate
court that reversed Meehan's conviction noted that one could infer
from this concealed currency that Meehan was engaged in activities
associated with drug dealing.  See Meehan, 597 N.E.2d at 1386.  
Even though this evidence was held to be insufficient to establish
beyond a reasonable doubt that Meehan was conspiring with Turk to
traffic the cocaine that was found in her possession, it is at
least enough to establish probable cause to believe that he had
done so.  Cf. Roche, 81 F.3d at 255 ("[T]he quantity and quality of
proof necessary to ground a showing of probable cause is not the
same as the quantity and quality of proof necessary to convict.").  
Because there was probable cause to believe that Meehan was
involved in drug trafficking at the time he was charged with that
crime, the district court properly granted summary judgment against
both his state and federal malicious prosecution claims.
II.  Claims Against the Town of Plymouth
    Meehan claims that the Town was liable for its officers'
actions under 42 U.S.C.  1983 because it had failed to properly
train and supervise them.  As the Supreme Court has stated,
however, "inadequacy of police training may serve as the basis for
1983 liability only where the failure to train amounts to
deliberate indifference to the rights of persons with whom the
police come into contact."  City of Canton v. Harris, 489 U.S. 378,
388 (1989).  Because the complaint fails to allege that the failure
to train was deliberate, or that it was directly and causally
linked to the alleged violation of Meehan's civil rights, the claim
was properly dismissed.
                          CONCLUSION
    For the foregoing reasons, we AFFIRM the district court's
dismissal of Meehan's complaint against Plymouth and the district
court's grant of summary judgment in favor of the individual
defendants.

</body>

</html>