Vlack v. Rye, NH, et al.          CV-98-271-M    05/28/99
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Laura Vlack,
        Plaintiff

        v.                              Civil No. 98-271-M

Town of Rye, New Hampshire
and Delton J. Record,
        Defendants


                          **O R D E R**


        In April of 1998, plaintiff, Laura Vlack, initiated this

civil action in the Rockingham County (New Hampshire) Superior

Court, by filing a five count writ against defendants, Delton

Record and the Town of Rye.  In counts 1 and 2, plaintiff raises

claims of negligence, false arrest, and malicious prosecution.

In count 3, she alleges that defendants, while acting under color

of state law, violated her civil rights.  See 42 U.S.C. § 1983.

In essence, plaintiff alleges that defendant Delton Record filed

a false police report, charging that she had stalked him.  She

also claims that police officers in the Town of Rye, acting in

concert with Record, failed to properly investigate that report

and, instead, arrested plaintiff without probable cause.

Finally, she claims that the Town's chief of police, acting in a

prosecutorial role and pursuant to an unconstitutional municipal

custom or policy, violated her federally protected rights by

pursuing her prosecution.

The Town of Rye removed the action, asserting that this court has federal question jurisdiction over plaintiff's section 1983 claims and supplemental jurisdiction over her state law claims. Record moves for summary judgment as to plaintiff's § 1983 claims against him. The Town of Rye moves for summary judgment with regard to all of plaintiff's claims against it. Plaintiff objects.[1]

## Background

Plaintiff and defendant Record were romantically involved for approximately 12 years, until some time in 1995. In April of 1995, plaintiff went to Record's home to speak with him. Record called the Rye Police Department and the responding officers asked plaintiff to leave the premises. She complied. One of the responding police officers, Brian Dejoy, completed an incident report in which he stated that when he arrived at the scene, plaintiff "appeared to be very nervous and extremely emotional." Officer Dejoy reported that after he determined that plaintiff was not carrying any weapons, she returned to her car, where she attempted to telephone Record using her cellular phone. Officer

---

[1] It is, perhaps, worth noting that in her memorandum in opposition to summary judgment, plaintiff repeatedly references her expectation that additional discovery will reveal evidence which further supports her assertions that Record and agents of the Town conspired to effect her unlawful arrest and prosecution and that Chief Loomis prosecuted her pursuant to some unconstitutional municipal custom or policy. She has not, however, filed any motion (or the required supporting affidavits) under Rule 56(f) seeking additional time within which to respond to the pending motions for summary judgment.

2

Dejoy says that he instructed her to have no further contact with Record and told her to leave the premises. Plaintiff complied and, as she was driving away, began yelling, "Del, you're a coward."

Officer Dejoy then went into the home and spoke with Record, who disclosed the nature of his extramarital relationship with plaintiff and explained why he had been hesitant to reveal that relationship and seek police assistance in the past. Record insisted that Officer Dejoy arrest plaintiff immediately. Officer Dejoy explained that he needed additional information about plaintiff's conduct, without which, he said, an arrest was unjustified. At that point, the phone rang. Record explained that he believed it was plaintiff and, therefore, Officer Dejoy answered. It was, in fact, plaintiff, who said that she needed to speak with Record. Officer Dejoy reportedly told her that she would be arrested if she placed any further calls to Record. Record again reiterated his demand that plaintiff be arrested. He told Officer Dejoy that plaintiff had repeatedly telephoned him, after having been told not to do so, and that she also came to his office and followed him to work sites in Rhode Island after having been told not to do so. Record also told Officer Dejoy that plaintiff was emotionally unstable and possibly suicidal. Officer Dejoy asked if Record would prepare a written witness statement and file a complaint and supporting affidavit for the crime of stalking. Record said that he would.

3

Subsequently, Record filed a misdemeanor complaint against plaintiff, alleging that she had engaged in criminal stalking. In support of that complaint, Record submitted an affidavit, in which he alleged: (1) on April 2, 1995, plaintiff arrived at his home, shouting and pounding on the rear door until he contacted the police, who arrived at the scene shortly thereafter; (2) Record and plaintiff had been involved in a personal relationship for several years; (3) On Monday, January 2, 1995, he informed plaintiff that their relationship was over; (4) subsequent to that date, plaintiff sent him balloons and candy, contacted him by telephone, and was again told not to contact him any more; (4) despite again having been told not to contact Record, plaintiff appeared in Rhode Island (and contacted Record) while Record was there on business; (5) plaintiff followed Record's wife to a store in North Hampton, New Hampshire, during the evening of March 10, 1995; (6) Record was concerned for the safety of himself and his family and disclosed that plaintiff possessed both a .357 caliber and a .38 caliber firearm.

At that point, Officer Dejoy was apparently satisfied that probable cause existed to arrest plaintiff. After obtaining an arrest warrant and emergency protective order through the Plaistow District Court, Officer Dejoy contacted members of the Exeter police department, to inform them that Rye police officers would be serving the warrant on plaintiff (a resident of the Town of Exeter). Upon their arrival at plaintiff's home, the officers

4

were unable to locate her. Accordingly, the matter was turned over to the Exeter police, with instructions to notify Rye police once they had located and arrested plaintiff.

The following day, Officer Dejoy was informed that the Exeter police department had plaintiff in custody. Officer Dejoy drove to Exeter, returned plaintiff to the Rye police station, and processed her. Among other things, Dejoy reported that plaintiff informed him that "sooner of later she was going to end her life" and also discussed the means by which she planned to kill herself. Officer Dejoy explained that he would like plaintiff to check in to the Pavilion (a medical facility) for psychiatric observation. Plaintiff revealed that she was already seeing a doctor there and agreed to check in voluntarily. Officer Dejoy and another officer then transported plaintiff to the hospital. She was subsequently discharged from the emergency room.

Later that day, plaintiff was charged with misdemeanor criminal stalking, in violation of New Hampshire Revised Statutes Annotated ("RSA") 633:3-a, and released on $1000 personal recognizance bail. The case was prosecuted by Rye Police Chief Brad Loomis. After reviewing the evidence against plaintiff, Loomis reduced the charge against her to criminal trespass (a violation, rather than a misdemeanor). A bench trial terminated in plaintiff's favor, with a finding of not guilty.

**Discussion**

I.   The Town of Rye, New Hampshire.

Plaintiff has not sued Officer Dejoy or Chief Loomis (in either their official or individual capacities). Instead, she claims only that the Town of Rye is liable for the injuries she allegedly suffered as a result of Chief Loomis's decision to prosecute her on the charge of criminal trespass. She also seems to claim that the Town is liable for Officer Dejoy's (and possibly Chief Loomis's) allegedly negligent failure to investigate Record's claims prior to arresting her on the charge of criminal stalking.

A municipal liability claim under section 1983 must allege that a municipal policy, custom, or practice caused, or was a moving force behind, a deprivation of the plaintiff's constitutional rights. McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 819 (1985) and Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978)). Thus, factual allegations which, if proven, would show that a municipal policy caused a violation of a plaintiff's constitutional rights, would state a claim under section 1983. However, to maintain the claim where, as here, "a plaintiff seek[s] to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights[, the plaintiff] must demonstrate that the municipal action was taken with 'deliberate

indifference' to its known or obvious consequences." <u>Board of</u> <u>Com'rs of Bryan County v. Brown</u>, 520 U.S. 397, 407 (1997) (emphasis added) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989))).

Neither plaintiff's complaint nor her memorandum in opposition to summary judgment provides much insight into what she views as the unlawful municipal custom or policy which allegedly caused a deprivation of her federally protected rights. Instead, plaintiff relies almost exclusively upon general, largely unhelpful allegations concerning the lack on any evidence against her with regard to the charge of stalking (or, eventually, the reduced charge of trespass):

> In the present case the Chief of Police, Brad Loomis, represented, established, and enforced the official policy of the Town of Rye.
>
> In the present case, it is evident from the affidavit of the Plaintiff that the criminal charge against her that was started on April 3, 1995 alleging "stalking" was without any basis whatsoever, and without any kind of investigation to substantiate same. The lack of substantiation for the charge is further borne out by the fact that same was ultimately <u>nol</u> <u>prossed</u> eight (8) months later. Nevertheless, the Town of Rye, acting through its Chief Prosecutorial Officer, Chief Loomis, substituted a charge of "criminal trespass" for which the Town further knew there was no basis whatsoever, and insisted upon going forward with the Plaintiff's trial, which resulted in her full acquittal on January 3, 1996. Under the circumstances that can be proven in this case, . . . a jury could reasonably conclude that the Plaintiff's injuries occurred as a direct and immediate consequence of the <u>unconstitutional municipal</u> <u>actions</u> of the Town of Rye.

7

Plaintiff's memorandum (submitted with documents 14 and 15) at 6-7 (emphasis supplied).[2]

    A.    <u>Plaintiff's Arrest</u>.

In order to hold the Town of Rye liable for the conduct of Officer Dejoy and/or Chief Loomis, and to prevail upon her section 1983 claims for false arrest, negligent investigation, unlawful seizure, and interference with her rights of free speech, assembly, privacy, and equal protection, plaintiff must demonstrate: (1) that those rights were, in fact, violated; (2) as a result of a municipal custom or policy.  In response to defendants' motions for summary judgment, she has failed to demonstrate that there is any genuine issue of material fact as to either of those elements.

First, the record discloses that on April 2, 1995, Officer Dejoy had a reasonable basis to believe that probable cause existed for plaintiff's arrest for stalking, in violation of RSA

_____

    [2]    Plaintiff's use of the phrase "unconstitutional municipal actions" (as opposed to "unconstitutional municipal policy") suggests that she may be seeking to hold the Town of Rye liable on a theory of respondeat superior – that is, imposing liability on the Town exclusively for the actions of Officer Dejoy and Chief Loomis, <u>without regard</u> for the fact that she must first demonstrate that those actions were the product of an unconstitutional municipal custom or policy.  She has, for example, not alleged that the Town had a custom of providing its law enforcement officers with inadequate training or supervision, nor has she alleged that the Town made a practice of permitting police officers to file false criminal charges against citizens simply at the urging of a powerful or influential member of the community and without adequate investigation, nor has she alleged that the Town engaged in negligent hiring practices.

633:3.  See <u>Roche v. John Hancock Mutual Life Ins. Co.</u>, 81 F.3d 249, 254 (1st Cir. 1996) ("Probable cause to arrest exists if, at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense."); <u>Hartgers v. Town of Plaistow</u>, 141 N.H. 253, 255 (1996) ("Probable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense.  The determination of probable cause must be viewed in the light of factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.") (citations omitted).

The New Hampshire criminal code defines "stalk" as any one of the following:

(1)  To follow another person from place to place on more than one occasion for no legitimate purpose with the intent to place such person in fear for his personal safety; or

(2)  To appear on more than one occasion for no legitimate purpose in proximity to the residence, place of employment, or other place where another person is found with the intent to place such person in fear for his personal safety; or

(3)  To follow another person from place to place on more than one occasion for no legitimate purpose under circumstances that would cause

9

a reasonable person to fear for his personal safety; or

(4) To appear on more than one occasion for no legitimate purpose in proximity to the residence, place of employment, or other place where another person is found under circumstances that would cause a reasonable person to fear for his personal safety.

RSA 633:3-a I(d). Even assuming that Officer Dejoy lacked any evidence that plaintiff intended by her conduct to put Record in fear for his personal safety, he still could have reasonably concluded that plaintiff had violated section (d)(3) or (d)(4), neither of which contains any requirement that the defendant intend to cause the victim to fear for his or her safety.

Prior to obtaining the arrest warrant, Officer Dejoy knew, among other things, that: (1) on April 2, 1995, the Rye police department had received a report of an "unwanted subject" on the premises at Record's home; (2) plaintiff was that "unwanted subject" and appeared to be in an agitated and emotional state; (3) despite having been advised by the responding officer not to contact Record, plaintiff telephoned Record from her car immediately after driving off the premises (lending support to Record's allegations that she had disregarded his earlier instructions not to have any further contact with him); (4) Record insisted that plaintiff be arrested and explained that she had repeatedly made unwanted contact with him (after specifically being instructed not to do so), had followed his wife to a store in a neighboring town, was emotionally unstable and possibly

10

suicidal, and possessed at least two firearms; (5) plaintiff and Record had been romantically involved in an extra-marital affair for several years and Record claimed to have specifically told plaintiff that their relationship was over and she was to have no further contact with him; nevertheless, Record claimed that she continued to contact him by telephone, appeared at his place of work, directed gifts to his place of work, and even followed him to Rhode Island when he traveled there on business.

Additionally, Record swore to an affidavit supporting the criminal complaint, arrest warrant, and emergency protective order, in which he reiterated his concerns for his own safety, as well as that of his family members. And, finally, Record provided Officer Dejoy with a number of letters written by plaintiff and directed to Record (at least two of which arrived after Record claimed to have instructed plaintiff to have no further contact with him). While plaintiff may, as she asserts in her affidavit, view those letters as loving expressions of her devotion to Record, a detached police officer, particularly under the circumstances of this case, could reasonably view those letters as evidence that plaintiff had become obsessed with Record and, in light of the other evidence known to the officer, was stalking him and posed a potential danger to him and his family members.

11

Although she vigorously denies many of the statements set forth in the affidavit submitted by Record in support of the criminal complaint, plaintiff has proffered no evidence which in any way calls into question the officers' reliance (at the time they sought the arrest warrant) upon those allegations. She merely asserts that if the investigating officers had taken the time to more fully investigate the situation, viewing the circumstances from her perspective rather than Record's, they would have (or, at a minimum, should have) understood that she posed no threat to him and realized that she had committed no crime. Perhaps plaintiff's explanation of the situation is accurate. Perhaps not. The relevant question, however, is whether a reasonable officer, armed with the information reasonably available at the time, could have concluded that there was probable cause to effectuate an arrest. The answer to that question is simple and straightforward: there was probable cause to support plaintiff's arrest. Notwithstanding plaintiff's assertions that the officers should have (and, upon further investigation, likely would have) viewed her conduct as benign and entirely unthreatening, those officers certainly had ample justification to be concerned for Record's safety and to conclude that there was probable cause to believe that plaintiff had violated the law, particularly since there is no evidence that they had any reason to doubt Record's claims or his repeated assertions that he was very much concerned for his family's

12

safety, and given plaintiff's erratic behavior when confronted by the police at Record's home.

It is equally important to note that <u>regardless of plaintiff's intent</u>, her conduct could have been perceived by a reasonable person as threatening and, therefore, in violation of New Hampshire's law against stalking. Plaintiff's assertion that a more thorough investigation (involving primarily an interview of plaintiff and consideration of her general denials of any wrongdoing) does not undermine that fact. <u>See, e.g.</u>, <u>Romero v. Fay</u>, 45 F.3d 1472, 1477-78 (10th Cir. 1995) ("In sum, we reject Plaintiff's contention that Defendant Fay's failure to contact his alleged alibi witnesses in itself amounted to a constitutional violation that rendered the arrest without probable cause. Defendant Fay's failure to investigate Plaintiff's alleged alibi witnesses did not negate the probable cause for the warrantless arrest in the absence of a showing that Defendant Fay's initial probable cause determination was itself unreasonable."); <u>Thompson v. Olson</u>, 798 F.2d 552, 557 (1st Cir. 1986) ("Police officers hear many self-exonerating claims from suspects and should not be required to give significant weight to these statements in post-arrest determinations of whether probable cause has dissipated to such an extent that the suspect should be released").

Finally, it is noteworthy that plaintiff does not (nor could she) claim that, prior to her arrest, the officers cavalierly failed to examine physical evidence readily available to them or interview potential alibi witness. Aside from the letters plaintiff had written, the relevant evidence in this case was limited almost exclusively to testimony from three sources: the complaining witness/victim (Record), Officer Dejoy, and plaintiff. Faced with Record's detailed description of plaintiff's conduct (which, if true, would certainly support an arrest and which Officer Dejoy had no reason to doubt) and Officer Dejoy's personal interaction with, and observations of, plaintiff, her protestations of actual innocence and lack of any intent to threaten Record can hardly be said to have undermined probable cause for her arrest.

Because there was, as a matter of law, probable cause for her arrest, plaintiff cannot demonstrate that any of her federally protected rights were violated as a result of that arrest. See Roche 81 F.3d at 254 ("Of course, liability under § 1983 requires not only state action but also an unconstitutional deprivation of rights. . . . At a bare minimum, if probable cause to arrest and prosecute the appellant existed, no unconstitutional deprivation occurred."). Thus, plaintiff's § 1983 claim against the Town (at least as it relates to her arrest) necessarily fails. See Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998) ("Normally, . . . a municipality cannot be

14

held liable unless its agent actually violated the victim's constitutional rights.").

B. Plaintiff's Prosecution.

With regard to her section 1983 malicious prosecution claims, plaintiff asserts that Chief Loomis's decision to prosecute her for criminal trespass violated her right to be free from unreasonable searches and seizures, as well as her rights to due process, privacy, free speech, freedom of assembly, and free and unmolested travel. As a matter of law, however, § 1983 is generally not a proper vehicle by which to vindicate due process (whether procedural or substantive) rights in the context of a malicious prosecution claim.

> We note as an initial matter that [plaintiff's] § 1983 malicious prosecution claim is not properly based on either a procedural or substantive due process violation. A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action. Further, there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution.

Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) (citations and internal quotation marks omitted). See also Roche 81 F.3d at 256 ("The law is settled that a garden variety claim of malicious prosecution garbed in the regalia of § 1983 must fail. There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution, and the availability of a plainly adequate remedy under [state] law

15

defeats the possibility of a procedural due process claim.")
(citations omitted).

Accordingly, the court will assume that plaintiff is seeking to vindicate her Fourth Amendment rights through her § 1983 malicious prosecution claim. To state a viable claim, plaintiff must alleged that "criminal proceedings were initiated against [her] without probable cause and for an improper purpose and were terminated in [her] favor." Landrigan v. City of Warrick, 628 F.2d 736, 745 n.6 (1st Cir. 1980). See also Meehan, 167 F.3d at 89 ("Thus, a § 1983 malicious prosecution action based upon a deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate proceedings."). Additionally, because her claims are exclusively against the Town of Rye, plaintiff must again demonstrate that a municipal custom or policy was the moving force behind her allegedly wrongful prosecution.

Nevertheless, in support of her assertion that the Town is liable for damages she sustained as a result of having been wrongfully prosecuted for the events which transpired on April 2, 1995, plaintiff again fails to identify the nature of the allegedly offensive municipal custom or policy which resulted in that prosecution. Instead, she has chosen to focus on facts which she claims demonstrate that Officer Dejoy and/or Chief

16

Loomis knew, or should have known, that she was innocent of criminal stalking and the lesser charge of criminal trespass.

First, she points out that Chief Loomis chose to drop the charge of criminal stalking and, instead, prosecuted her for the lesser charge of criminal trespass (thereby demonstrating, at least in plaintiff's view, his subjective knowledge that there was insufficient evidence to support a conviction for stalking and undermining any claim that there was probable cause to arrest her on that charge). Next, plaintiff notes that she was actually acquitted of the lesser charge of trespass. Based on these facts, plaintiff claims that Chief Loomis knew or should have known from the very inception of the prosecution that there was no evidence that she had committed a crime. However, neither Chief Loomis's decision to reduce the charge against plaintiff nor her subsequent acquittal, standing alone, do much to advance plaintiff's claims (particularly in the absence of any alleged municipal custom or policy which acted as the driving force behind her arrest and/or prosecution).

Chief Loomis's decision to reduce the charge against plaintiff demonstrates nothing more than the exercise of prosecutorial discretion — he may have decided there was insufficient evidence to support a finding, beyond a reasonable

17

doubt, that plaintiff had engaged in criminal stalking,[3] or, he may have decided a lesser conviction would serve the public interest. The decision to prosecute plaintiff on a lesser charge does not call into question the validity of that prosecution nor does it, without more, cast doubt on the legality of plaintiff's arrest. Similarly, plaintiff's acquittal simply demonstrates that the judge who presided over her trial determined that there was insufficient evidence to prove, beyond a reasonable doubt,

---

[3]    In his affidavit, Chief Loomis testified as follows:

> Prior to the trial of this matter, I was contacted by Ms. Vlack's defense attorney, who informed me that Mr. Record had continued to see Ms. Vlack on several occasions after they broke up in January of 1995 and that he had encouraged continued contact. I spoke with Mr. Record about the information I had received from Ms. Vlack's attorney and he denied the allegations of continued contact. Mr. Record also expressed a strong desire for the prosecution to proceed. I believe that it is important in potential domestic violence situations to take into account the complainant's wishes and in this case, Mr. Record made it very clear that he felt that Ms. Vlack posed a threat to him and his family and should be prosecuted. I subsequently decided to nol pros the stalking charge and proceed with the lesser charge of criminal trespass in light of the clear evidence in the case that Ms. Vlack had gone onto the property in a highly emotional state and had made threats against Mr. Record.

Loomis affidavit at para. 4. With regard to the crime of trespass, the New Hampshire criminal code provides that, "A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place." RSA 635:2. Plainly, Chief Loomis had probable cause to believe that plaintiff had violated the criminal statute, including evidence that she had appeared at Record's home after Record testified (in his affidavit) she had been specifically instructed not to do so. Chief Loomis also knew that plaintiff refused to leave Record's premises, thereby forcing him to contact the police to have her removed. See State v. Dupuy, 118 N.H. 848 (1978) (discussing the elements of the crime of trespass).

that plaintiff had engaged in criminal trespass. Standing alone, it undermines neither the validity of plaintiff's arrest nor the decision to prosecute her. See Roche, 81 F.3d at 255 ("the fact that a state court jury acquitted the appellant of the criminal charges does not speak to the existence of probable cause."). See also Rodriguez v. Ritchey, 556 F.2d 1185, 1190-92 (5th Cir. 1977) ("just because a person validly arrested is later discovered to be innocent does not make the arrest 'unlawful,' for Fourth Amendment purposes" nor does it give rise to a § 1983 claim against the arresting officers for failure to investigate.).

The fact remains that, notwithstanding the prosecutor's inability to produce sufficient evidence to demonstrate plaintiff's guilt beyond a reasonable doubt, both her arrest and her prosecution were supported by probable cause. Cf. Meehan, 167 F.3d at 89-90 (noting that when an individual was subjected to a warrantless arrest and seeks to recover under § 1983 for malicious prosecution, the proper inquiry is whether there was probable cause to institute criminal charges). And, the record is devoid of any evidence that Chief Loomis's decision to prosecute plaintiff for trespass: (1) was supported by less than probable cause; or (2) violated any of her federally protected rights.

Moreover, like her claims relating to the allegedly unlawful arrest, plaintiff's § 1983 claims arising out of her prosecution for criminal trespass suffer from another fatal defect.  Aside from merely alleging that Chief Loomis was a Town policy-maker and that he decided to prosecute plaintiff for a violation which he knew (or should have known) she never committed, plaintiff has failed to identify any municipal custom or policy which acted as the "moving force" behind the alleged deprivation of her federally protected rights.  Plainly, absent evidence of such a custom or policy, the Town cannot be held liable on a § 1983 claim for the conduct of its agent, Chief Loomis.

The Supreme Court has addressed this issue on several occasions, and recently observed:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
>
> * * *
>
> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.

20

<u>Board of Com'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404-05 (1997) (emphasis in original). <u>See also</u> <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1156 (1st Cir. 1989) ("[C]ourts have established two requirements for plaintiffs to meet in maintaining a § 1983 action grounded upon an unconstitutional municipal custom. First, the custom or practice must be attributable to the municipality. In other words, it must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights."). Because plaintiff has failed to identify any municipal policy which allegedly caused her injuries (and also failed to demonstrate that any of her federally protected rights were actually violated as a result of her prosecution), the Town of Rye is entitled to judgment as a matter of law with regard to plaintiff's § 1983 claims.

II.  <u>Delton Record</u>.

In support of her section 1983 claims against Record, plaintiff alleges that he conspired with or otherwise acted in concert with officers of the Rye Police Department in an effort to have her wrongfully arrested (and ultimately prosecuted) for conduct in which she never engaged. In support of her conspiracy theory, plaintiff alleges that: (1) Record had a longstanding relationship with the Rye Police Department, which began as early

21

as the 1970s, when Record was an officer with that department; (2) Record told her that he had often performed "gratis" polygraph examinations of suspects detained by the Rye Police Department and/or potential employees (Record is the owner of a private investigation agency and apparently is certified to perform polygraph examinations); (3) in 1991-92, Record chaired a board chosen by the Rye selectmen to hire a new police chief and was instrumental in the hiring of current Police Chief Brad Loomis; (4) Record provided free membership in his private tennis club to Chief Loomis and was a social friend of Loomis; (5) in 1993, Record worked to secure funds for a new police station for the Town of Rye and served on the planning committee for the same; (6) Record and his son served on the Rye Highway Safety Committee with Chief Loomis; (7) Record served as the president of the Portsmouth New Hampshire Crime Line (which included the area of Rye), which gave him further contact with the Rye Police Department and Chief Loomis; and (8) in light of his close and long-standing relationship with the Rye Police Department and Chief Loomis, Record had substantial influence over them in general and, more specifically, influenced them to arrest her and pursue unjustified criminal charges against her stemming from the April, 1995 incident. See Affidavit of Laura Vlack (attached to document no. 15).

To succeed on her section 1983 claims against Record, plaintiff must, among other things, demonstrate that he acted

22

under color of state law. There are, of course, rare occasions on which private citizens may be deemed to have acted under color of state law, by virtue of having conspired with or otherwise acted in concert with state actors. See, e.g., Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); Roche, 81 F.3d at 253 ("Since § 1983 is aimed at state action and state actors, . . . persons victimized by the tortious conduct of private parties must ordinarily explore other avenues of redress. To be sure, the rule is not absolute: private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983"). Plaintiff has, however, failed to demonstrate that this is such a case.

Even crediting her factual allegations and assuming that Record had a close personal relationship with Chief Loomis and other members of the Rye police department, plaintiff has produced nothing which even suggests that he conspired with those state actors to violate plaintiff's federally protected rights (or that her rights were violated). Thus, she has failed to demonstrate that there is any trial-worthy issue as to whether Record acted under color of state law when he reported plaintiff's conduct to the police and subsequently filed a criminal complaint (and supporting affidavit) against her. See, e.g., Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989)

23

("[W]e have held that merely complaining to the police does not convert a private party into a state actor.  Nor is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action.") (citations omitted); Hughes v. Meyer, 880 F.2d 967, 972 (7th Cir. 1989) ("[P]rivate parties are not state actors when they merely call on the law for assistance, even though they may not have grounds to do so; there must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal.") (citation and internal quotation marks omitted); Lowe v. Aldridge, 958 F.2d 1565, 1573 (11th Cir. 1992) ("[I]n order to prove such a conspiracy [and thereby demonstrate that a private citizen has acted under color of state law], a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights. . . . Thus, plaintiffs must provide some evidence of an 'understanding' and 'willful participation' between the private and state defendants toward the goal of procuring the [challenged] warrant.").

In fact, as noted above, plaintiff's arrest was supported by probable cause and, therefore, she cannot demonstrate that any of her federally protected rights were violated by that arrest. And, as to plaintiff's claims relating to her allegedly wrongful prosecution, there is nothing to suggest that her federally protected rights were infringed by Chief Loomis's decision to

24

prosecute her for trespass.  Thus, plaintiff has failed to demonstrate that her federally protected rights were in any way infringed by the Town, its agents, or Record.  She has also failed to demonstrate that Record acted under color of state law when he reported plaintiff's conduct to the police and subsequently sought her arrest by filing a criminal complaint against her.  Accordingly, she cannot, as a matter of law, prevail on her § 1983 claim against Record.

III. <u>Plaintiff's State Law Claims</u>.

Having concluded that defendants are entitled to judgment as a matter of law with regard to plaintiff's federal claims, the court must next determine whether it should exercise supplemental jurisdiction over her state claims or remand them to state court.  <u>See generally</u>, <u>Camelo v. American Federation</u>, 137 F.3d 666, 672 (1st Cir. 1998).

To prevail with regard to her state law malicious prosecution claim, plaintiff must show "that the defendant was instrumental in initiating the criminal charges; that the plaintiff was acquitted or otherwise successful on the merits; that the defendant acted with malice, that is, with a purpose other than bringing a suspected offender to justice; and that the defendant lacked probable cause to believe that the plaintiff had committed acts constituting a crime."  <u>McGranahan v. Dahar</u>, 119 N.H. 758, 769 (1979).  Lack of probable cause is an essential

25

element of a malicious prosecution claim. See Johnston v. Flatley Realty Investors, 125 N.H. 133, 136 (1984). And, at least with regard to the Town of Rye (and its agents) the court has already determined that, as a matter of law, probable cause existed for plaintiff's arrest and prosecution. Thus, if the court were to remand plaintiff's state malicious prosecution claim to state court, plaintiff would be precluded from relitigating the issue of probable cause. Remanding her state law claims against the Town of Rye would, therefore, serve no viable purpose, would amount to a waste of judicial resources, and would needlessly inconvenience and burden the Town and its agents. The same is true with regard to plaintiff's state law claim against the Town for false arrest. Accordingly, the court exercises its supplemental jurisdiction over count 1 of plaintiff's complaint and concludes that the Town of Rye is entitled to judgment as a matter of law.

The issue is more difficult with regard to plaintiff's state law claims against Record. In her affidavit, plaintiff alleges that Record knew that there was no factual basis for him to pursue criminal charges against her. Record denies plaintiff's allegations. Nevertheless, the parties' dispute creates a genuine issue of material fact. If, as plaintiff claims, Record lied in his affidavit, knew that there was no basis for his criminal complaint against her, and acted with malice when he pursued that criminal charge against her, plaintiff might be

26

entitled to prevail as to one or more of her state law claims against Record. Accordingly, having resolved all of plaintiff's federal claims against her, the court declines to exercise its supplemental jurisdiction over her state law claims against Record, and remands the matter to state court. The Court of Appeals for the First Circuit has observed:

> A federal court exercising original jurisdiction over federal claims also has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a) (West 1993). If, however, the court dismisses the foundational federal claims, it must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir.1996). Among the factors that will often prove relevant to this calculation are the interests of fairness, judicial economy, convenience, and comity. Id. Comity is a particularly important concern in these cases. . . Accordingly, the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.

Camelo v. American Federation, 137 F.3d at 672 (emphasis supplied).


## Conclusion

Plaintiff's arrest on charges of criminal stalking was, as a matter of law, supported by probable cause. That determination effectively undermines most of plaintiff's claims against the Town because it precludes any finding that her federally

27

protected rights were infringed by her arrest.  As for her § 1983 claims against Record, even if plaintiff were able to produce evidence of the alleged conspiracy between Record and law enforcement officers (which she has not), it is difficult to imagine how Record might possibly have unlawfully "conspired" with police officers to effectuate a lawful arrest.

With regard to the plaintiff's claims arising out of her prosecution for criminal trespass, the Town of Rye is entitled to judgment as a matter of law.  As with the claims relating to her arrest, plaintiff has simply failed to point to any evidence from which a reasonable trier of fact might infer that: (1) plaintiff's federally protected rights were in any way infringed by the decision to prosecute her for criminal trespass; or (2) the allegedly wrongful conduct of Chief Loomis (acting in his prosecutorial capacity) was the product of any municipal custom or policy.

For the foregoing reasons, defendants' motions for summary judgment (documents no. 9 and 10) are granted.  Counts 2 (state law claims against Record) and 5 (plea for enhanced compensatory damages) of plaintiff's complaint are hereby remanded to state court.  The Clerk of the Court is directed to enter judgment in accordance with this order and close the case.

28

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 28, 1999

cc:   Brian F. McCaffrey, Esq.
      Richard J. Walsh, Esq.
      Dyana J. Crahan, Esq.
      Douglas J. Wenners, Esq.