Yekimoff v. Seastrand          CV-02-187-B  03/19/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Serge Yekimoff**

**v.**                                    Civil No.  02-187-B
                                          **Opinion No. 2004 DNH 052**

**David Seastrand, et al.**


MEMORANDUM AND ORDER

Serge Yekimoff has brought this civil rights action against New London Police Chief David Seastrand, New Hampshire Police Officer David Goldstein, Assistant County Attorney David Rotman, former Public Defender Jeanne Herrick, the Town of New London, and Merrimack County.  He claims that defendants violated his rights under the United States Constitution by: (1) arresting him without probable cause; (2) making false promises to induce him to surrender; (3) maliciously prosecuting him; (4) providing false testimony and otherwise undermining the fairness of his trial; (5) discriminating against him on the basis of his ethnicity, sexual orientation, and perceived HIV status; (6) engaging in a conspiracy to violate his constitutional rights;

and (7) failing to provide him with adequate mental health and dental care, denying him access to the courts and subjecting him to illegal strip searches while he was incarcerated awaiting trial. He also asserts a variety of state law claims.

Defendants have filed motions for judgment on the pleadings. Because I determine that Yekimoff has not alleged viable federal claims against any of the defendants, I grant defendants' motions as to those claims and decline to exercise supplemental jurisdiction over Yekimoff's state law claims.

## BACKGROUND[1]

The events leading to the present litigation began on December 13, 2000 when Yekimoff wrote a suicide note. Upon reading it, a friend called the New London Police Department. Patrolman Robert Thorp responded to the call and found Yekimoff in the backyard of his friend's house. Thorp decided to take Yekimoff into protective custody after a failed attempt to engage him in conversation. At that point, Yekimoff took out a gun and

---

[1] Unless otherwise noted, I draw the relevant facts from Yekimoff's allegations in the Second Amended Complaint ("Complaint") (doc. no. 29).

pointed it at his own head, saying that he would rather kill himself than surrender.[2]  Thorp drew his own pistol in response, and Yekimoff ran inside his friend's house.  An armed standoff ensued, and Thorp sought assistance from other jurisdictions and a SWAT team.

Over the course of the next several hours, New London Police Chief David Seastrand and others negotiated by telephone with Yekimoff.  Troopers Spaulding and Mitchell, and perhaps others, were at the scene.  At some point, Seastrand offered Yekimoff mental health care and immunity and told him that the State of New York, which had issued a warrant for Yekimoff's arrest on a probation violation, would not seek his extradition.  In response, Yekimoff demanded to speak to the prosecutor.  New Hampshire State Police Lieutenant David Goldstein called Yekimoff, falsely identified himself as Dan Gordon, an Assistant County Attorney, and confirmed Seastrand's immunity offer. Yekimoff nevertheless refused to surrender until after tear gas rounds were fired into the house approximately 10 hours after

---

[2]  The parties disagree as to whether Yekimoff also pointed the gun at Thorp.

Thorp first arrived on the scene.[3]

Yekimoff was arraigned and charged on December 14, 2000, with criminal threatening and being a fugitive from justice. New London Police Officer Kinzer and Assistant County Attorney Rotman prepared the complaint describing the charges. Assistant County Attorney Helrich argued for $150,000 cash bail, but the court set bail at $25,000 on the criminal threatening charge and ordered Yekimoff to be held without bail on the fugitive from justice charge.

On December 20, 2000, a probable cause hearing was held at the New London District Court, where Attorney Herrick was assigned to represent Yekimoff. At that time, Herrick and Yekimoff discussed Yekimoff's version of the events. She advised him to waive the probable cause hearing as it "would be more advantageous to have it at 'a later date when more information be [sic] discovered.'" (Compl. ¶ 15). Yekimoff accepted her advice.

---

[3] Tear gas is mentioned only in the Answers filed by Seastrand and New London (doc. no. 36). However, this fact does not appear to be in dispute.

Herrick and Yekimoff did not speak again until January 14, 2001, when he was brought to Merrimack County Superior Court for a hearing to increase his bail. There, Herrick informed him that the fugitive from justice charge had been dismissed but that the state wanted to raise his bail on the criminal threatening charge. At the hearing, Rotman described the state's version of events. Neither Rotman nor Herrick informed the court of the immunity ruse. Bail was raised to $100,000.

On January 26, 2001, Herrick wrote to Yekimoff, stating that she would file a motion for bail reduction. However, she never filed the motion. On February 1, 2001, Yekimoff filed a pro se motion to appear before the grand jury. Although Rotman notified Yekimoff that he would be allowed to testify before the grand jury, County Attorney Johnson later decided that because Yekimoff was incarcerated, he would only be allowed to testify via a written statement to be reviewed in advance by Rotman. The court ultimately denied Yekimoff's motion to appear before the grand jury.

Seastrand, Goldstein, and Thorp were complaining witnesses at the grand jury hearing, and Rotman presented the case to the

grand jury. Yekimoff asserts that the witnesses perjured themselves and that Rotman knowingly suborned their perjury. On February 15, 2001, the grand jury returned an indictment charging Yekimoff with reckless conduct, criminal threatening, and being a felon in possession of a firearm. Although Herrick promised to obtain a transcript of the grand jury proceedings, she made no attempt to do so.

On February 28, 2001, Yekimoff learned that Herrick had left the public defender's office and withdrawn from his case. Yekimoff then filed a motion to proceed pro se. He was arraigned on March 12, 2001, and entered a not guilty plea. The court initially denied his request and appointed Michael Davidoff as his new attorney. On March 15, 2001, Yekimoff renewed his motion to proceed pro se, and on April 19, 2001, the court granted it.

Yekimoff claims that Rotman acted unscrupulously in prosecuting him. He states that Rotman offered him an opportunity to change his plea to insanity, which Yekimoff "categorically rejected." (Compl. ¶ 19). Later, however, Rotman "vigorously opposed" Yekimoff's motion to appoint a psychiatric

expert.  Additionally, on May 30, 2001, after Yekimoff rejected Rotman's offer to change his plea again, Rotman served him with a Notice of Intent to Seek an Extended Sentence.

Yekimoff challenges the conditions of his pretrial custody. He was subjected to visual body cavity inspection searches following visits and trips to the library.  Yekimoff claims that "as part of the search, corrections officers inspected the inside of plaintiff's mouth and soles of his feet, he was also ordered to lift his testicles to fully expose his groin, and to spread his buttocks, at which time officers visually inspected his body cavity." (Compl. ¶ 22).

Yekimoff received no mental health assistance while he was in custody.  Nor did he receive dental or other medical care.  He further asserts that the jail's conditions provided "unreasonable food rationing," "hazardous air quality," and "overcrowding." (Compl. ¶ 22).  He also complains of limitations on his access to the New Hampshire Supreme Court law library, which was designated as the library available for pro se criminal defendants.

Yekimoff was acquitted of all charges at his criminal trial.

## STANDARD OF REVIEW

The standard for reviewing a motion for judgment on the pleadings is essentially the same as the standard for reviewing a motion to dismiss for failure to state a claim. See Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998); Cooper v. Thomson Newspapers, Inc., 6 F. Supp. 2d 109, 112 (D.N.H. 1998). Accordingly, in reviewing such a motion I "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Donovan v. City of Haverhill, 311 F.3d 74, 76 (1st Cir. 2002) (citation omitted). "Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." Feliciano v. Rhode Island, 160 F.3d 780, 788 (1st Cir. 1998); Int'l Paper Co. v. Town of Jay, 928 F.2d 480, 482-83 (1st Cir. 1991). Although the standard for judgment on the pleadings is difficult to satisfy, it is not unattainable. The standard does not require "that a court must

(or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992); see also Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993) ("[b]ecause only well-pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law"). Nor will I engage in speculation to find a factual basis for unsupported conclusory allegations. I also am mindful that a complaint filed by a pro se litigant must be held to "less stringent standards" than one drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520 (1972). I note, however, both that Yekimoff appears to be a fairly experienced pro se litigant (see, e.g., Yekimoff v. Sup. of Merrimack County House of Corr., Civ. No. 01-224 (dismissed without prejudice)) and that the current motions challenge Yekimoff's second amended complaint, which is his third attempt to produce an adequate complaint.

## ANALYSIS

Yekimoff asserts a series of federal and state claims for unlawful arrest, malicious prosecution, unlawful abuse of

process, and conspiracy against a number of individual and municipal actors.  For ease of consideration, I discuss each federal claim in turn.  Because I ultimately conclude that the facts asserted do not support a viable claim against any of the defendants under federal law, I grant defendants' motions for judgment on the pleadings as to Yekimoff's federal claims and decline to exercise supplemental jurisdiction over his state claims.

## A.    Probable Cause for the Arrest

Yekimoff claims that his arrest was illegal because defendants lacked probable cause to arrest him.  See, e.g., Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1st Cir. 1999); Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).  I disagree.  Taking as true the facts as stated in the complaint, it is clear that the defendants had ample grounds to arrest Yekimoff on several charges.

Probable cause exists when "'the facts and circumstances within the [police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed

or was committing an offense.'" <u>Rivera</u>, 979 F.2d at 263 (<u>quoting</u> <u>United States v. Figueroa</u>, 818 F.2d 1020, 1023 (1st Cir. 1987) alterations in original). The test is objective, but looks to the facts and evidence of the particular case. Here the evidence available to Seastrand and other police officers was clearly sufficient to support a reasonable belief that Yekimoff had committed several offenses.

Yekimoff admits that: (1) he had a gun that he represented was loaded; (2) he asserted that he would rather kill himself than be taken into custody; (3) he took out the gun in Thorp's presence; (4) he refused to be taken into custody even though he was repeatedly instructed to surrender; (5) he was wanted by the New York authorities on an outstanding probation violation warrant; and (6) he had been convicted of a felony in the State of New York.[4] (Compl. ¶ 13-14, 23). These admitted facts gave defendants ample cause to believe that Yekimoff was a felon in possession of a firearm in violation of N.H. Rev. Stat. Ann. § 159:3, a fugitive from justice under N.H. Rev. Stat. Ann. § 612:2, and was guilty of resisting arrest under N.H. Rev. Stat.

_____

[4] The police were aware of his outstanding arrest warrant in New York during the standoff.

-11-

Ann. § 594:5, and criminal threatening under N.H. Rev. Stat. Ann. § 631:4. The fact that a jury later acquitted him of these charges does not undermine the validity of his arrest. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996) ("[t]he inquiry into the existence *vel non* of probable cause is not to be undertaken from the perspective of hindsight but from the perspective of a hypothetical 'reasonable man' standing in the reporting person's shoes at the time when that person acted"). I therefore determine that none of the defendants are liable for arresting Yekimoff without probable cause.

B. **False Promise to Induce Surrender**

Yekimoff asserts that defendants violated his constitutional rights when they offered him immunity and mental health assistance as a ruse to get him to surrender. I disagree. Yekimoff did not give up any constitutional rights by relying on the immunity and mental health assistance offers, and he had no right to resist arrest, regardless of whether the arrest was lawful. See N.H. Rev. Stat. Ann. § 642:2. Thus, the ruse did not cause him any harm. Moreover, the ruse was no more egregious than similar conduct in other cases that did not give rise to

viable constitutional claims.  See, e.g., United States v. Rengifo, 858 F.2d 800 (1st Cir. 1988) (permissible for police to secure custody by deceit).  While it would have been preferable if Yekimoff had surrendered immediately as Thorp demanded, thereby making misrepresentations of this sort unnecessary, an immunity ruse was a reasonable method of securing his safe surrender after hours of failed negotiations in an armed standoff.  I therefore dismiss all claims against all defendants related to the immunity ruse.

**C.  Malicious Prosecution**

To the extent Yekimoff asserts a § 1983 claim for malicious prosecution, it fails.  New Hampshire provides an adequate remedy for the common law tort of malicious prosecution.  MacRae v. Brant, 108 N.H. 177 (1967).  The availability of this state law remedy defeats any procedural due process claim for malicious prosecution.  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail.");  Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) ("[a] § 1983 claim for malicious prosecution as a deprivation of procedural

-13-

due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action").

**D.   False Testimony and other Misconduct During Trial**

Yekimoff asserts that various aspects of his trial and pretrial proceedings violated his Sixth Amendment right to a fair trial.  In pertinent part, the Sixth Amendment ensures criminal defendants a fair and impartial jury, a speedy trial, information about the charges against him, and assistance of counsel.  See, e.g., Turner v. Louisiana, 379 U.S. 466, 471 (1965); Doggett v. United States, 505 U.S. 647 (1992); Maine v. Moulton, 474 U.S. 159, 170 (1985).  Yekimoff fails, however, to allege sufficient facts to support a Sixth Amendment claim against any of the defendants.

Yekimoff claims that Seastrand perjured himself and requested that other police officers perjure themselves, too. Nowhere in his complaint, however, does he identify the perjurious statements.  Without these factual allegations, his claims against Seastrand fail.  See, e.g., Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).  In any event, Seastrand is entitled to absolute immunity.  See Briscoe v. LaHue, 460 U.S. 325 (1983).

-14-

Yekimoff asserts that Rotman perjured himself when he denied in testimony that he was "unaware of the police officers [sic] falsehoods until after the standoff had concluded, and that he was helping police to draw an arrest warrant." (Compl. ¶ 13). This claim fails because Rotman is entitled to absolute immunity. Briscoe, 460 U.S. 325. Rotman is therefore entitled to dismissal of all claims that are based on testimony he gave as a witness.

Yekimoff also asserts that Rotman obtained a false report to from Goldstein which purported to be from a psychological expert and indicated that Yekimoff would be eligible for an enhanced sentence. Since Yekimoff was acquitted, however, he was not subjected to any increased sentence, and therefore he suffered no compensable harm as a result of this alleged misconduct.

Yekimoff appears to claim that public defender Herrick denied him effective assistance of counsel. He also asserts that Herrick was motivated by race and national origin bias, as well as sexual orientation bias. He concedes, however, that because Herrick is not a state actor, she cannot be held liable on a § 1983 claim unless she conspired with public officials. Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (per curiam) (private attorney, sued for actions taken as a

-15-

court-appointed counsel, is not acting under color of state law); Dennis v. Sparks, 449 U.S. 24, 27 (1980). However, Yekimoff fails to allege any facts to support his conspiracy theory.

Yekimoff also claims that Rotman violated his trial rights by breaching a promise to allow him to testify before the grand jury. This allegation, however, would not support a constitutional claim even if it were true. There is no specific provision in the Constitution that protects the public from governmental deceit, nor does Yekimoff point to one. I therefore analyze this claim under the substantive due process standard. In order to find a constitutional violation, Rotman's conduct would need to be extreme or outrageous, which it clearly was not. United States v. Russell, 411 U.S. 423, 432 (1973).

Yekimoff also asserts that defendants improperly interfered with his bail proceedings and denied him his "right to be free from excessive bail." (Compl. ¶ 29). In order to assert a claim for bail impropriety, Yekimoff must show among other things that the defendant "help[ed] to shape" and "exercis[ed] significant influence over" the bail decision. Wagenmann v. Adams, 829 F.2d 196, 212 (1st Cir. 1987).

Here, there is no indication that Seastrand, Rotman, or any

-16-

other defendant actively participated in the first bail hearing. Nor does the complaint otherwise explain how any of the defendants influenced the bail decision that was made at that hearing.  At the second bail hearing, Rotman asked the court to increase bail, and Herrick represented Yekimoff.  The facts asserted state only that

> Rotman recited a police concocted version of the incident, asking the state court to increase cash bail to $100,000 – because the plaintiff did obtain assurances of his friends to secure $25,00 cash bail and because he previously 'dared' to fight extradition.  At the hearing, Herrick failed to inform the court about the immunity proffer or to raise issues of plaintiff's mental condition during the incident.  She was unwilling (because of her personal bias towards the plaintiff), unprepared and incompetent to oppose bail increase that resulted in a $100,000 cash bail which the plaintiff was unable to meet."

(Compl. ¶ 16).  Taking these assertions as true, I do not find that either Herrick or Rotman engaged in actionable misconduct.

Yekimoff also alleges in a bare conclusory form that Merrimack County is liable for Rotman's actions, stating that it hired an incompetent prosecutor, failed to train him, and negligently supervised him.  He does not allege, however, that Merrimack County has a policy of doing any of these things.  Nor does he sufficiently plead a failure to train claim.  Therefore,

-17-

Merrimack County does not bear any liability for Rotman's allegedly improper conduct. See Meehan v. Town of Plymouth, 167 F.3d 85, 92 (1st Cir. 1999)

## E. Discrimination Based on Ethnicity, Sexual Orientation, or Perceived HIV Status

Yekimoff asserts that he was denied equal protection of the law because Seastrand thought he "was not good enough, [] because of his national origin and because of his sexual orientation and then-perceived HIV status."[5] (Compl. ¶ 26). Nowhere in the complaint, however, does Yekimoff identify his national origin, his sexual orientation, or his HIV status. Nor does he assert or allege facts to support an implication that Seastrand or anyone else was aware of his national origin, sexual orientation, or HIV status. Furthermore, he does not allege any facts to show that he was treated differently from anyone else. His bare conclusory statements are insufficient.

Yekimoff makes similar unsupported allegations regarding Rotman. He points to a series of actions taken by Rotman in

---

[5] Yekimoff has some unmatched quotation marks in this portion of his complaint, but lacks citations or attribution. I therefore treat this as an assertion rather than a quotation and I will not speculate on the source.

relation to his psychiatric evaluation and sentencing, but these do not establish that Rotman intended to discriminate against him. Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995) (mere recitation of coincidences does not establish improper motive). Therefore his claims that he was denied equal protection necessarily fail, first because he has not alleged that the defendant knew of his status, and second because he has not alleged any facts showing that he was treated differently from anyone else. Judge v. City of Lowell, 160 F.3d 67, 74 (1st Cir. 1998) (stating that "district judges may dispose of [claims against public officials on equal protection grounds] prior to permitting any discovery where a plaintiff, having been provided the opportunity to do so, fails to allege specific, nonconclusory factual allegations that establish improper motive") (internal quotation omitted); cf., Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64-66 (1st Cir. 2002).

## F. Conspiracy

Yekimoff asserts that each individual defendant acted in conspiracy with the others to deprive him of constitutional rights. A civil rights conspiracy under § 1983 is

a combination of two or more persons acting in

-19-

> concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (internal quotations omitted).  For a conspiracy to be actionable under § 1983, the conspiracy must have resulted in an "actual deprivation of a right secured by the Constitution and Laws."  Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989).  As described above, Yekimoff has failed to show any facts that would establish that his rights were infringed in any way.  I therefore dismiss his conspiracy claims.[6]

## G.    Access to the Courts, Mental Health Assistance, and Body Cavity Searches

Yekimoff also asserts that Rotman, in concert with others, denied him meaningful access to the courts by eliminating his weekly visits to the library for a period of time.  To establish standing to litigate this claim in federal court, Yekimoff must show that he has suffered an actual injury, i.e., that the limitations on his access to the law library "hindered his

---

[6]  His conspiracy claim under 42 U.S.C. § 1985 fails for similar reasons.

-20-

efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 349-51 (1996); see also Christopher v. Harbury, 536 U.S. 403, 413-15 (2002). Since Yekimoff ultimately prevailed in his pro se defense and was acquitted, he has not alleged any injury.

Yekimoff asserts that the defendants violated his constitutional rights by failing to provide him with mental health treatment after his arrest.[7] To state a claim for inadequate medical care Yekimoff must allege facts demonstrating: (1) a serious medical need; and (2) the defendants' purposeful indifference thereto. See Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987); see also, Mahan v. Plymouth County House of Corr., 64 F.3d 14 (1st Cir. 1995) (deliberate withholding of specifically requested prescribed antidepressants cannot be the basis for liability if the prison officials were not subjectively aware of a serious medical need for them). Even in this, his third attempt at drafting an adequate complaint, Yekimoff has failed to allege any facts that establish that the prison officials either

---

[7] Yekimoff asserts that he was incarcerated at the Merrimack County House of Corrections. Because he has not sued any of the individual employees of the House of Corrections, the only defendant that could be held liable for conditions of confinement claims is Merrimack County.

knew or should have known that Yekimoff had any serious medical needs that were going unmet. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994) (subjective knowledge required to show deliberate indifference).

Yekimoff asserts that his need for mental health assistance was so obvious that the fact that he did not receive it "manifested reckless and callous disregard . . . and 'deliberate indifference.'" (Compl. ¶ 72). Beyond the relevant facts already discussed (that Yekimoff had threatened suicide and that he had been offered mental health assistance by others not at the prison), Yekimoff does not assert any additional facts that would suggest that he had any serious medical need for mental health care. Finally, even if Yekimoff had alleged facts that might support a claim against one or more prison employees, he has not alleged facts that would permit a claim to be asserted against the County on this basis.[8]

---

[8] For the same reasons, I find no liability regarding the failure to provide emergency dental care. Yekimoff has not asserted anything beyond the fact that he was denied it. Nowhere in his complaint (or other court submissions) does he state whether he had a dental emergency, whether he informed anyone or whether anyone was aware of his need for treatment. In the absence of such allegations, Merrimack County is entitled to judgment on the pleadings.

Yekimoff also asserts that Merrimack County violated his constitutional rights by subjecting him to visual body cavity searches after visits and trips to the library. He adequately asserts that the searches were the result of municipal policy or custom. See, e.g., Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978); Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 58 (1st Cir. 1994). Because Yekimoff was accused of criminal threatening through the use of a firearm, however, he cannot complain that he was improperly strip searched after visits and trips to the library. Roberts v. Rhode Island, 239 F.3d 107, 112 (1st Cir. 2001) ("courts have given prisons latitude to premise searches on the type of crime for which an inmate is convicted or arrested. The reasonable suspicion standard may be met simply by the fact that the inmate was charged with a violent felony") (citing Dufrin v. Spreen, 712 F.2d 1084 (6th Cir. 1983) (visual body cavity search did not violate the Fourth Amendment rights of woman arrested for felonious assault). Accordingly, I reject his challenge to the County's alleged strip search policy.

## H.    Other Federal Claims

To the extent that Yekimoff claims that Seastrand violated

his constitutional rights by spreading rumors about him, he does not state a constitutional claim. See Paul v. Davis, 424 U.S. 693, 702 (1976) (there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment") (internal footnote omitted). Yekimoff has asserted only bare conclusions, not facts from which I could find that he had any injury beyond that of ordinary defamation. This claim must therefore fail.

## I.    State Law Claims

Yekimoff has asserted a variety of state law claims against each defendant. Because the parties are not diverse, I have jurisdiction over the state law claims only to the extent that they are supplemental to the federal claims. See 28 U.S.C. § 1367. Since I am dismissing all federal claims, I exercise my discretion, given the early stage of this litigation, to decline to exercise jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3); Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

-24-

## CONCLUSION

For the reasons discussed above, I grant judgment on the pleadings for each defendant with respect to Yekimoff's federal claims (Doc. nos. 71, 51, 47, 50, 48), and decline to exercise jurisdiction over his state law claims.  This necessarily renders all other pending motions moot.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 19, 2004

cc:  Serge Yekimoff, pro se
     John Alexander, Esq.
     Andrew Livernois, Esq.
     Emily Rice, Esq.
     Andrew Schulman, Esq.